**ERIE RAILROAD COMPANY, Plaintiff-Appellant, v. STANDARD OIL COMPANY OF OHIO, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24318. Decided March 13, 1958.

Burgess, Fullmer, Parker & Weh, for plaintiff-appellant.

McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, for defendant-appellee.

## OPINION

By HURD, J:

This is an appeal on questions of law from an order of the Court of Common Pleas of this County vacating a judgment entered on a jury verdict in favor of the plaintiff and in rendering judgment in favor of the defendant-appellee on the ground that answers of the jury to the special interrogatories are inconsistent with the general verdict.

In February of 1924, the Standard Oil Company and the Erie Railroad Company entered into "a sidetrack agreement" which covered the location and use of one of the sidetracks within the No. 2 plant of the Standard Oil Company. The plaintiff's action is based on the indemnity provision of the agreement which is set forth in the petition and provides:

"The Shipper also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Shipper, its employees or agents, to the person or property of either of the parties hereto and their employees and to the person or property of any other person or corporation, while on or upon said sidetrack; and if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

For purposes of brevity, the parties will hereinafter sometimes be referred to as "the railroad company" and "the shipper" respectively.

On May 17, 1950, while the sidetrack agreement was in full force and effect, an accident occurred on the sidetrack whereby one, Edward W. Lade, Jr., sustained certain injuries for which he brought suit against the railroad company in the United States District Court. The injuries were the result of a collision between a switch engine operated by the railroad employees and a tractor-trailer, operated by the said Edward W. Lade, Jr., one of the employees of the shipper. This accident occurred at the crossing of a private drive on the shipper's premises at the intersection of the aforesaid sidetrack. The railroad company notified the shipper of the suit filed and demanded that the shipper defend and indemnify it under the terms of the aforesaid sidetrack agreement. This demand was refused. Upon trial of the action, judgment was rendered for said Edward W. Lade, Jr., against the railroad company and was satisfied by the payment of $44,500 by the railroad company. Thereafter, the railroad company filed this action against the shipper to recover the sum of $44,500 paid in satisfaction of the Lade judgment, together with the amount expended by it for attorney's fees and expenses.

The case was tried on the issues made up by the plaintiff's amended petition and defendant's fourth amended answer thereto. Of the six specifications of negligence set forth in the plaintiff's amended petition, the court submitted to the jury only the following:

"2. Defendant negligently allowed and permitted petroleum products to accumulate in and about the rails of said sidetrack, resulting in an

oily and greasy condition of said rails, which prevented plaintiff's switch engine from being efficiently braked in such a manner as to have avoided the aforesaid collision.

"3. Defendant negligently failed to have and maintain a watchman at the aforesaid crossing.

"6. Defendant negligently designed, constructed and maintained the aforesaid crossing as a dangerous and hazardous crossing by reason of the foregoing and absence of warning signs or devices or a watchman."

Three forms of general verdict were given the jury, one providing for a finding in favor of the plaintiff for the entire amount of its damage, another providing for a finding for one-half of that amount, and the third, a finding for the defendant.

Under the instructions which the court gave the jury, the plaintiff was entitled to complete indemnity in the event the jury found that the accident was caused solely as a result of defendant shipper's negligence; if the jury found that the negligence of both plaintiff and defendant caused the accident, the plaintiff was entitled to a verdict of one-half of its damages; and in the event the jury found that the accident was caused solely by plaintiff's negligence, then the verdict was to be for the defendant. In addition to submitting these general forms of verdict to the jury, the court, at the request of the defendant, submitted eight interrogatories to be answered by the jury. The jury unanimously returned a general verdict for the plaintiff for one-half of its damages, thus, in effect finding that liability arose from the joint or concurrent negligence of both parties. The interrogatories submitted to the jury are as follows:

"SPECIAL INTERROGATORY NO. 1:

"Was the plaintiff, The Erie Railroad Company, guilty of any negligence which solely and directly caused the collision on May 17, 1950?

"Answer: No.

"SPECIAL INTERROGATORY NO. 1a:

"Was the defendant, The Standard Oil Company, guilty of any negligence which solely and directly caused the collision on May 17, 1950?

"Answer: No.

"SPECIAL INTERROGATORY NO. 2:

"Was the plaintiff, The Erie Railroad Company, guilty of any negligence which directly contributed to cause the accident of May 17, 1950?

"Answer: Yes.

"SPECIAL INTERROGATORY NO. 3:

"Was the defendant, The Standard Oil Company, negligent?

"Answer: Yes.

"SPECIAL INTERROGATORY NO. 4:

"If your answer to Interrogatory No. 3 is in the affirmative, in what respect or respects, did the defendant fail to exercise that degree of care which an ordinarily reasonable and prudent person would have exercised under the same or similar circumstances?

"Answer: We feel the side track agreement of February 14, 1924, covers the complete siding, therefore, The Standard Oil Co. did fail to enforce proper and adequate rules for the government of its employees on or about the side track, according to paragraph 11.

"SPECIAL INTERROGATORY NO. 5:

"If your answer to Interrogatory No. 3 is in the affirmative, what act or acts of The Standard Oil Company, defendant, was the cause or causes which directly produced the collision and without which it would not have occurred.

"Answer: The operation of the Standard Oil truck was negligent in its manner of crossing the side track. Lack of warning signs at crossing was an added hazard.

"SPECIAL INTERROGATORY NO. 6:

"Was the sidetrack running from the Erie Railroad right-of-way to the southerly end of the oil storage warehouse in a reasonably safe condition for travel by locomotives and trains using said tracks in the ordinary manner on May 17, 1950?

"Answer: The track was safe for normal operations, but unsafe for emergency operation.

"SPECIAL INTERROGATORY NO. 7:

"Was the railroad crossing at which Lade's accident occurred on May 17, 1950, a reasonably safe place for travel by automotive vehicles using said roalroad crossing in the ordinary manner?

"Answer: No.

"SPECIAL INTERROGATORY NO. 8:

"Was the accident of May 17, 1950, involving the Erie Railroad Company diesel locomotive and the tractor and trailer of The Standard Oil Company, which was operated by Edward W. Lade, an unavoidable accident?

"Answer: No, it could have been avoided."

Subsequent to the jury's return of the general verdict in favor of the railroad company, the court entered judgment accordingly for plaintiff on the verdict. Thereafter, defendant filed a motion to vacate the judgment in favor of plaintiff and to enter judgment in favor of the defendant on the ground that the jury's answers to the interrogatories were inconsistent with its general verdict in favor of the plaintiff. On July 29, 1957, the court granted defendant's motion to vacate its judgment for the plaintiff and to enter its judgment for the defendant on the special findings of fact and answers to the interrogatories.

The sole question presented on this appeal is whether the trial court erred in holding that the jury's answers to the eight special interrogatories were inconsistent and irreconcilable with its general verdict in favor of the plaintiff.

The parties are in agreement concerning the effect of §2315.17 R. C., which provides that when a special finding under §2315.16 R. C., is inconsistent with the verdict, the former shall control the latter, and concerning the rule that answers to special interrogatories must be completely inconsistent and irreconcilable with a general verdict before the court can enter judgment under the provisions of §2315.17 R. C.

It has been held that in determining whether the answers to special interrogatories are inconsistent and irreconcilable with the general verdict: 1) it is the duty of the court to harmonize, if reasonably possible, a special finding of the jury with its general verdict; 2) judgment should

not be rendered on special findings of fact as against the general verdict unless such findings, when construed together, are inconsistent and irreconcilable with the general verdict, and 3) that in its determination, the court may not consider the evidence but is confined to a consideration of the pleadings, the general verdict and answers to special interrogatories. The law of Ohio has been so well settled on these principles that we think it is unnecessary to discuss the various cases at any great length. See **Davis v. Turner, 69 Oh St 101, 68 N. E. 819; Chris Holl Hardware Co. v. Logan Brick Supply Co., 84 Oh St 455, 95 N. E. 1144; Board of Commrs. of Mercer County v. Deitsch, 94 Oh St 1, 113 N. E. 745; Prendergast v. Ginsburg 119 Oh St 360, 164 N. E. 345; Ohio Fuel Gas Co. v. Ringler, 126 Oh St 409, 185 N. E. 553; Fox v. Conway, et al., Rcrs., 133 Oh St 273, 13 N. E. 2d, 124; Elio v. Trans. Co., 147 Oh St 363, 71 N. E. 2d 707; Klever v. Reid Bros. Express, Inc., 151 Oh St 467, 86 N. E. 2d 608; McNees v. Cincinnati Ry. Co., 152 Oh St 269, 89 N. E. 2d 138; Larrissey v. Norwalk Truck Lines, 155 Oh St 207, 98 N. E. 2d 419; Hamilton v. City of Cleveland, 93 Oh Ap 93, 110 N. E. 2d 50** (Motion to Certify overruled May 21, 1952); **Young v. Featherstone Motors, Inc., 97 Oh Ap 158, 124 N. E. 2d 158; Richhart v. Richard, 77 Abs 227,** syllabus 2.

In **Klever v. Reid Bros. Express, Inc.,** supra, syllabus one states:

"It is the duty of a court to harmonize, if possible, a special finding of a jury with its general verdict."

(See also, **Larrissey v. Norwalk Truck Lines,** supra, at page 214.)

In **McNees v. Cincinnati Street Ry. Co.,** supra, syllabus one states:

"The answers of a jury to special interrogatories will not authorize a judgment different from that authorized by a general verdict, where such answers can be reconciled with the general verdict. (**Davis v. Turner, 69 Oh St 101,** and **Ohio Fuel Gas Co., v. Ringler, 126 Oh St 409,** approved and followed.)"

Coming now to consider the interrogatories and the answers thereto, it is quite apparent that all of the answers are consistent with and in harmony with the general verdict.

However, all of the answers cannot be considered for the reason that the jury in its answer to interrogatory number four found the defendant negligent on an issue which had not been submitted to it. Likewise, the first sentence of its answer to interrogatory number five cannot be considered. Here the jury found that the shipper's employee, Lade, was negligent in his operation of the truck when he was injured, a specification of negligence which the court instructed the jury to disregard. However, the jury's answer to interrogatory number four and the first sentence of its answer to interrogatory number five do not invalidate its answers to other interrogatories propounded which establish the joint negligence of both parties. The answers to interrogatories one, one (a), two and three find, in effect, that both parties were guilty of negligence and neither party's negligence was the sole cause of the accident, and both parties appear to be in agreement as to the effect of these findings.

We think that the second sentence contained in the jury's answer to interrogatory number five, namely, "Lack of warning signs at cross-

ing was an added hazard," the answer to interrogatory number six that "the track was safe for normal operations, but unsafe for emergency operations," and the negative answer to interrogatory number seven, are consistent with the general verdict and encompass the three specifications of negligence submitted by the court to the jury, particularly specification number six, wherein it is charged that "Defendant negligently designed, constructed and maintained the aforesaid crossing as a dangerous and hazardous crossing by reason of the foregoing (i. e., the negligence charged in specifications numbers two and three) **and absence of warning signs or devices or a watchman.**" (Emphasis added.) Furthermore, the answer to interrogatory number eight cannot be construed as inconsistent or irreconcilable with the general verdict. We think, when construed together, it clearly appears that the answers of the jury to all of the interrogatories establish negligence on the part of the shipper as well as the railroad company, and, therefore, fix liability for the accident upon the shipper jointly and concurrently with that of the railroad company, thus bringing both parties within the terms of the indemnity agreement whereby under such circumstances each was to bear the burden of expense equally. This is true even though the answer to interrogatory number four and the first sentence of the answer to interrogatory number five cannot be considered for the reasons heretofore stated.

Counsel for the shipper stresses and to a great extent relies upon the case of **Masters v. New York Central Rd. Co.,** 147 Oh St 293, 70 N. E. 2d 898, in support of his contention that the answers to the interrogatories are inconsistent with the general verdict. We have examined that case carefully and find it inapplicable to the instant case. In the Masters case, the jury failed or was unable to find the existence of a claimed act of negligence, whereas here the jury did find claimed acts of negligence as charged in the petition.

Finally, counsel for the shipper argues that the indemnification agreement is against public policy. We can only consider, within the narrow limits of this appeal, that part which relates to the paragraph of indemnity set forth in the petition. A reading of that paragraph clearly discloses that "The Shipper also agrees to indemnify and hold harmless the Railroad Company for loss, damage or **injury from any act or omission of the Shipper, its employees or agents,** to the person or property of either of the parties hereto and their employees and to the person or property of any other person or corporation, while on or upon said sidetrack * * *." (Emphasis added.) This relates to the negligence of the shipper only. It is only when liability shall arise from joint or concurrent negligence of both parties that any claim or liability shall be equally borne by them. In other words, the shipper shall bear the entire burden of its own negligence when the facts warrant, and in any event, its own share only, if it is jointly and concurrently negligent with the railroad.

We construe this as an agreement on the part of the shipper to indemnify or to hold harmless the railroad company only for the shipper's own negligence, and thus respond for its own acts of commission or omission which result in injury pursuant to the terms of the agree-

ment. The same proposition applies with equal force to the railroad company. Such an indemnity agreement certainly is not contrary to public policy.

For the reasons stated, the judgment is reversed as contrary to law and the cause remanded to the Court of Common Pleas with instructions to reinstate the judgment on the verdict of the jury, in accordance with this opinion.

Exceptions. Order see journal.

SKEEL, PJ, KOVACHY, J, concur.