CUNNINGHAM et al., Appellants,

v.

HILDEBRAND et al., Appellees.

[Cite as *Cunningham v. Hildebrand* (2001), 142 Ohio App.3d 218.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77483.

Decided April 9, 2001.

*Stephen G. Thomas* and *Lorna J. Fried,* for appellants.

*Weston Hurd Fallon Paisley & Howley L.L.P.* and *Mark O'Neill,* for appellees.

---

TERRENCE O'DONNELL, Judge.

On December 3, 1997, a common pleas court jury returned a $70,000 verdict in favor of Kenneth Cunningham in connection with his claims for legal malpractice against John P. Hildebrand, Hildebrand, Williams & Farrell, Norman A. Fox, and the law firm of Fox & Coury. Subsequent to that verdict, the trial court, finding that the jury had reached a verdict "inconsistent and irreconcilable with the evidence submitted at trial," and had "returned answers to interrogatories which are both inconsistent and irreconcilable with the general verdict," entered judgment notwithstanding the verdict in favor of Hildebrand and Fox. Cunningham now appeals from that order, and from the court's orders dismissing his claim for emotional distress and his wife's derivative claim for loss of consortium. On appeal, Cunningham has presented nine assignments of error for our review. Upon consideration, we do not believe they are well taken and, therefore, we affirm the judgment of the trial court.

On June 12, 1987, Continental Airlines hired Cunningham as an airline maintenance mechanic. On March 19, 1988, Cunningham became involved in a dispute with a co-worker, Vince Gambino. Cunningham immediately reported the incident to his superiors, and Continental launched an investigation of the altercation. After taking statements from Cunningham, Gambino, and several witnesses, Continental suspended Gambino for three days without pay.

Cunningham claimed that Gambino had physically assaulted him and that he sustained injuries during this altercation. Thereafter, Cunningham requested and received from Continental a ninety–day leave of absence without pay commencing on May 17, 1988, in connection with his recent marriage and the remodeling of his new home. When Cunningham returned to work on August 15, 1988, he found that someone had broken into his locker and stolen his personal tools. He told his manager that he could not work under these conditions, clocked out, and never returned to work.

In a letter dated August 31, 1988, Continental terminated Cunningham for his unauthorized absence from work. Cunningham now claims that he sent Continental a grievance letter on September 12, 1988. However, the record before us indicates that Cunningham did not contact Continental *about his termination* until December 22, 1988, when he complained by letter about it. Continental refused to reopen the matter, based on its policy requiring grievances to be filed within ten calendar days.

Subsequently, in 1989, Cunningham again contacted Continental, but his former employer advised him that his grievance was untimely. Cunningham then enlisted an attorney from Newark, Ohio, who wrote a letter to Continental on July 6, 1990, requesting reinstatement. Continental denied this request.

On December 3, 1990, Continental filed for reorganization under Chapter 11 of the Bankruptcy Act, automatically staying all litigation against Continental.

Then, on December 10, 1990, Cunningham, for the first time, sought counsel from John P. Hildebrand in connection with his employment case against Continental. Cunningham paid Hildebrand a $2,000 retainer fee, and agreed to pay a thirty-five percent contingency fee from the proceeds of any settlement or award. Based upon his lack of employment law experience, Hildebrand decided to refer Cunningham's case to Norman A. Fox. On July 18, 1991, Fox filed a wrongful termination lawsuit against Continental, but neither Hildebrand nor Fox filed a proof of claim in the pending Continental bankruptcy.

On April 27, 1993, the bankruptcy court discharged Continental from all liability except to those permitted to participate in the distribution of Continental's estate. The bankruptcy court lifted the automatic stay, and Cunningham's claims against Continental were dismissed because no proof of claim had been filed during the bankruptcy proceedings.

Thereafter, Cunningham discharged Hildebrand and Fox, and retained new counsel, Bruce Elfvin, who also attempted settlement with Continental without success. Cunningham then filed a lawsuit against Hildebrand, Fox, and their respective law firms alleging that they committed legal malpractice when they failed to file a proof of claim form during Continental's Chapter 11 bankruptcy proceedings. Cunningham also asserted an emotional distress claim, and his wife filed a claim for loss of consortium.

During the trial of the malpractice case, the parties stipulated the negligence in not filing a proof of claim on behalf of Cunningham during Continental's bankruptcy proceedings. However, Fox and Hildebrand denied that this negligence proximately caused any damage to Cunningham. At trial, they asserted that Cunningham's claims against Continental under state and federal law had expired before Cunningham retained Hildebrand. Moreover, because Continen-

tal had consistently rebuffed the settlement requests of Cunningham and his counsel, Cunningham could not demonstrate any lost settlement opportunity.

Prior to trial, Hildebrand filed a motion *in limine* to exclude evidence relating to Cunningham's emotional distress claim and his wife's loss of consortium claim, which the court granted. Trial of this case commenced on November 24, 1997, and, after deliberation, the jury returned a general verdict in favor of Cunningham in the amount of $70,000, but also returned answers to interrogatories finding that Cunningham had not properly initiated a grievance against Continental and had not been authorized to walk off the job on August 15, 1988. The jury further found that, if Continental would have investigated Cunningham's absence, it would have reinstated him.

Fox and Hildebrand filed separate motions for judgment notwithstanding the verdict. In a seven-page opinion filed on April 17, 1998, the trial court granted both motions for judgment notwithstanding the verdict and entered final judgment in favor of Fox and Hildebrand. Cunningham has now appealed from that action of the trial court, and has presented nine assignments of error for our review. The first states:

"I. The trial court erred in granting JNOV:

"A. When it held that *Vahila v. Hall* (1997), 77 Ohio St.3d 421 [674 N.E.2d 1164], does not state the law of legal malpractice in Ohio;

"B. When it held that defendants' consent to instructing the jury upon plaintiff's lost opportunity of success, did not waive objections based upon that instruction;

"C. When it found the verdict irreconcilable with certain answers to interrogatories; and

"D. When it disregarded the law of the case by finding interrogatory No. 2, instead of Interrogatory No. 3, to be dispositive."

In the first assignment of error, Cunningham contends that the trial court erred in granting the motions for judgment notwithstanding the verdict filed by Hildebrand and Fox. Civ.R. 50(B) provides:

"Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the

judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."

In *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334, the Supreme Court stated at 275, 74 O.O.2d at 430, 344 N.E.2d at 338:

■■ "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. *McNees v. Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269 [40 O.O. 318, 89 N.E.2d 138]; *Ayers v. Woodard* (1957), 166 Ohio St. 138 [1 O.O.2d 377, 140 N.E.2d 401]; Civ.R. 50(A) and (B)."

Cunningham initially challenges the trial court's JNOV order based upon the court's alleged failure to follow *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164. In *Vahila*, the Supreme Court of Ohio held:

"[T]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss. *We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim.* See Note [*infra*] at 671; and *Krahn* [*v. Kinney*], 43 Ohio St.3d [103] at 106, 538 N.E.2d [1058] at 1062 [(1989)]. However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter. Such a requirement would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim." (Emphasis added.) *Id.* at 427–428, 674 N.E.2d at 1169–1170.

The *Vahila* court also noted:

" 'A strict "but for" test also ignores settlement opportunities lost due to the attorney's negligence. The test focuses on whether the client would have won in the original action. A high standard of proof of causation encourages courts' tendencies to exclude evidence about settlement as too remote and speculative. The standard therefore excludes consideration of the most common form of client recovery.' " *Id.* at 426, 674 N.E.2d at 1169, quoting Note, The Standard of Proof of Causation in Legal Malpractice Cases (1978), 63 Cornell L.Rev. 666, 670–671.

The record demonstrates that the trial court followed the standard set forth in *Vahila.* During jury instructions, the trial court stated:

"In a legal malpractice case, plaintiffs need not prove that they would have won the underlying case, but rather they are entitled to recover as damages the percentage value of the underlying lost opportunity of success.

"The attorneys acknowledge that they failed to file a claim for Mr. Cunningham in bankruptcy court and thereby deprived him of the chance of having his claim considered, for whatever it was worth.

"The plaintiff must prove by a preponderance of the evidence that if the bankruptcy court had considered his claim it would have awarded him some amount, or that he could have negotiated a settlement for some amount with the attorneys for Continental Airlines.

"Plaintiff must prove what the amount of his recovery probably would have been.

"It is for you, the jury to determine from the evidence whether the plaintiff would have prevailed in the bankruptcy case, and if so, what that amount probably would have been.

"It is also for the jury to determine from the evidence whether the defendants' negligence deprived plaintiff of the opportunity to be reinstated by Continental, and if so, what the net value of that loss would have been.

"It is for you, the jury, to decide what relief, if any, the plaintiff would have recovered."

As evident by the jury instructions, the trial court did not reject *Vahila.* The trial court's JNOV order also conforms with *Vahila.* The court did not apply a strict "but for" test. Nevertheless, the court required Cunningham "to provide some evidence of the merits of the underlying claim." *Vahila* at 428, 674 N.E.2d at 1170. The jury's answers to the first and second interrogatories demonstrate that Cunningham failed in this regard. Further, the record clearly demonstrates Continental's unwillingness to enter into any type of settlement because it had no liability based upon Cunningham's failure to file a grievance within ten calendar days.

Next, Cunningham claims that Hildebrand and Fox waived the arguments in their Civ.R. 50(B) motions by failing to object to the *Vahila* charge to the jury. Cunningham bases this proposition on the premise that the court's JNOV order did not comply with *Vahila*. However, as discussed above, the JNOV motions and the court's subsequent order were not based upon a strict "but for" test; rather, the court's JNOV order fully complied with the parameters of *Vahila*. Therefore, no such waiver occurred in this case.

Cunningham also argues that the trial court erred when it found the first and second jury interrogatories inconsistent with the general verdict. The jury interrogatories provided:

"1. Do you find that Kenneth Cunningham satisfied the requirements for initiating the Grievance Procedures as attached hereto relative to his termination.

"Answer: No.

"2. Do you find that Kenneth Cunningham's Supervisor, Craig Chamier, authorized Mr. Cunningham's walking off the job on August 15, 1988, until such time as a resolution could be worked out?

"Answer: No.

"3. Do you find that if Continental had investigated the reasons why Kenneth Cunningham left work on August 15, 1998, that Kenneth Cunningham would have been reinstated?

"Answer: Yes."

■ The trial court found that the answers to the first and second jury interrogatories "clearly establish that plaintiff failed to prove a timely filing of his grievance in accordance with his employer's established procedures, and his departure from work was unauthorized," and determined these answers to be both inconsistent and irreconcilable with the general verdict.

As this court held in *Erie RR. Co. v. Std. Oil Co. of Ohio* (1958), 107 Ohio App. 275, 279, 8 O.O.2d 205, 207, 148 N.E.2d 712, 715:

"It has been held that in determining whether the answers to special interrogatories are inconsistent and irreconcilable with the general verdict (1) it is the duty of the court to harmonize, if reasonably possible, a special finding of the jury with its general verdict, (2) judgment should not be rendered on special findings of fact as against the general verdict unless such findings, when construed together, are inconsistent and irreconcilable with the general verdict, and (3) that in its determination, the court may not consider the evidence but is confined to a consideration of the pleadings, the general verdict and answers to special interrogatories."

Under Civ.R. 49(B), "[w]hen one or more of the answers is inconsistent with the general verdict" the trial court has the discretion to select from three options: (1) the court may enter judgment in accordance with the answers notwithstanding the general verdict, (2) the court may return the jury for further consideration of its interrogatory answers and verdict, or (3) the court may order a new trial. See, also, *Tasin v. SIFCO Industries, Inc.* (1990), 50 Ohio St.3d 102, 553 N.E.2d 257, paragraph one of the syllabus. "If, however, an answer to an interrogatory is inconsistent with the general verdict, the interrogatory prevails." Staff Note to Civ.R. 49. The rule does not allow the court to enter judgment on a general verdict that is inconsistent with interrogatory answers. Civ.R. 49(B). Accordingly, we have concluded the trial court properly exercised its discretion in granting judgment notwithstanding the verdict in this case.

Cunningham also claims that the court had previously found that interrogatory number three stated the ultimate issue at trial and, therefore, he believes that the court should have been bound to accept the jury's answer to interrogatory number three as dispositive of this case. However, the record demonstrates that the court found interrogatory number two to be determinative:

"MR. O'NEILL: I don't have anything constructive to offer at this point. But I do think we ought to think seriously about the order in which these interrogatories are presented, and make it clear to them that they answer X and Y, only if they find clearly affirmative.

"MR. THOMAS: I don't think we have to do that. I think my No. 1 first, yours as No. 2, and then the last one as No. 3. If we get inconsistent answers from the jury, then—

"THE COURT: Well, certainly No. 2, if 'yes,' proceed to No. 3. If 'no,' you are concluded, because it says, 'Do you find that Cunningham's walking off the job is authorized.' "

The court clearly recognized the second interrogatory, not the third, to be determinative. Based upon the foregoing, Cunningham's arguments are unpersuasive, and we overrule this assignment of error.

"II. The trial court erred in dismissing plaintiffs' emotional distress and spousal claims excluding proof to support those claims."

Here, Cunningham and his wife urge that the trial court erred in dismissing their emotional distress and loss-of-consortium claims. Although the parties assume that the court dismissed the Cunninghams' emotional distress and loss of consortium claims under Civ.R. 12(B)(6), the court ruled on these motions subsequent to trial, and, therefore, we presume that the court considered matters outside the pleadings. Therefore, we will apply a summary judgment standard to this assignment of error. See Civ.R. 12(B) ("When a motion to dismiss for failure

to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the matters shall be treated as a motion for summary judgment and disposed of as provided in Rule 56."). Civ.R. 56(C) provides in part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In the legal malpractice context, this court has held that "[c]ompensatory damages may be awarded for mental suffering, anguish and humiliation where they are sustained as the result of *wrongful, intentional and willful* conduct." (Emphasis added.) *David v. Schwarzwald, Robiner, Wolf & Rock Co., L.P.A.* (1992), 79 Ohio App.3d 786, 801, 607 N.E.2d 1173, 1182.

In *Burkes v. Stidham* (1995), 107 Ohio App.3d 363, 668 N.E.2d 982, this court defined the elements of intentional infliction of emotional distress as follows:

"(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it." *Id.* at 375, 668 N.E.2d at 989, citing *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 588 N.E.2d 280.

The *Burkes* court noted that "[s]erious emotional distress requires an emotional injury which is both severe and debilitating." *Id.*, citing *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759.

As the Supreme Court of Ohio stated in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666:

" 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the

actor, and lead him to exclaim, "Outrageous!" ' " *Id.* at 374–375, 6 OBR at 426–427, 453 N.E.2d at 671, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46.

Cunningham further urges that the following actions on the part of Hildebrand and Fox constituted reckless, wanton, extreme, and outrageous conduct:

"1.   Jack Hildebrand did nothing for Plaintiff other than referring Cunningham to Fox. For instance, he did not respond to Continental's May 6, 1991 letter requesting a copy of Cunningham's written grievance, which formed the Defendants' entire theory for Cunningham's reinstatement.

"2.   Neither Defendant consulted a bankruptcy attorney when they learned of Continental's Chapter 11, and neither evaluated Cunningham's status as an employee covered by the Railway Labor Act.

"3.   Both Defendants ignored Cunningham's inquiries into the progress of his case (Tr. p. 627), and they prevaricated to Disciplinary Counsel when Cunningham sought outside assistance to get his lawyers to tend to his case.

"4.   Finally, when Hildebrand referred Cunningham to Fox, Hildebrand was defending Fox in a malpractice case in Cuyahoga County Common Pleas, and must have known that Fox was being prosecuted for ethical violations amounting to *crimen falsi.* Hildebrand kept Cunningham's $1,000.00[1] retainer, but handed his client's problems to an arguably incompetent lawyer." (Footnote added.)

We conclude that these allegations do not satisfy the elements of intentional infliction of emotional distress as a matter of law. Cunningham failed to present any evidence to indicate that Fox or Hildebrand intended to cause him emotional distress, or knew or should have known that their actions would result in serious emotional distress. Further, this behavior did not constitute extreme and outrageous conduct.

Accordingly, the trial court did not err in summarily dismissing Cunningham's emotional distress claim. On appeal, Cunningham acknowledges that his wife's loss of consortium claim derived from his emotional distress claim. Therefore, the court properly dismissed that claim as well. Therefore, we overrule this assignment of error.

█   "III.   The trial court erred in excluding plaintiff's 'case within a case' evidence.

"A.   That the co–worker who assaulted plaintiff stood accused and later discharged for illegal drug use; and

"B.   Of plaintiff's work–related injury."

---

1.   In the stipulations, the parties agree that Cunningham paid to Hildebrand a $2,000 retainer.

In the third assignment of error, Cunningham maintains that the trial court erred in excluding certain evidence relating to his wrongful discharge case against Continental. In particular, the court excluded a letter from Continental to Vince Gambino, the co-worker who assaulted Cunningham, which effectively terminated him for testing positive for cocaine. The court also excluded evidence of Cunningham's application for workers' compensation benefits. Cunningham urges that the court should have admitted this evidence relevant to plaintiffs' "case within a case."

Pursuant to Evid.R. 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court." *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Pursuant to Evid.R. 403(3), a court may exclude relevant evidence to prevent the needless presentation of cumulative evidence.

Upon review of the record, we have concluded that the trial court did not abuse its discretion in excluding evidence of Gambino's drug test or Cunningham's application for workers' compensation benefits. Based upon other testimony and stipulations, Cunningham attempted to establish the following: (1) Gambino assaulted Cunningham; (2) Cunningham sustained injuries requiring medical treatment as a result of this assault; (3) Continental suspended Gambino for the altercation; (4) Cunningham complained to Continental about Gambino's drug abuse; and (5) during Cunningham's leave, someone broke into his work locker and took his personal tools. Under these circumstances, further evidence of Gambino's drug use would not have been necessary to Cunningham's "case within a case." Further, evidence of Cunningham's workers' compensation claim would have constituted the presentation of cumulative evidence. Accordingly, we overrule this assignment of error.

"IV. The trial court erred in charging the jury:

"A. When it permitted the jury to retire before allowing objections to the charge;

"B. When it sua sponte instructed the jury to disregard defendants' failure to testify; and

"C. When it failed to instruct on the Railway Labor Act after a timely request."

In the fourth assignment of error, Cunningham raises three challenges to the court's jury instructions. First, the Cunninghams claim that the trial court failed

to give their attorney an opportunity to make objections to the instructions before the jury retired to consider its verdict. Civ.R. 51(A) provides:

"On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Upon review of the record, we have concluded that the court gave the parties fair opportunity to object to its instructions during a lengthy discussion before the jury was charged.

Cunningham also complains about the trial court jury instruction regarding the failure of Hildebrand and Fox to testify at trial. The trial court stated, "I instruct you that you are to make no inference from the fact that the defendants did not testify on direct examination." Initially, we note that Hildebrand and Fox testified on cross-examination. Moreover, we have concluded that the court did not abuse its discretion in this regard. See *Burke v. Schaffner* (1996), 114 Ohio App.3d 655, 665–666, 683 N.E.2d 861, 867–868 (holding that the trial court did not abuse its discretion in failing to instruct the jury regarding the presumption created when a party fails to testify).

Cunningham also asserts that the court failed to instruct the jury as to the Railway Labor Act. He urges that under the Railway Labor Act, he could have been reinstated notwithstanding the lack of a timely grievance. However, Cunningham fails to cite or quote specific provisions of the Act to support this contention. App.R. 16(A)(7). Accordingly, we summarily reject this argument.

Based upon the foregoing, we have concluded that the trial court did not abuse its discretion in instructing the jury. We therefore overrule the fourth assignment of error.

"V. The trial court erred when it allowed an unlicensed former attorney to participate in the trial without so instructing the jury."

As for the fifth assignment of error, Cunningham contends that the trial court erred in permitting Norman Fox to represent himself without informing the jury that Fox's license to practice law had been suspended. The trial court did advise the jury as follows: " * * * Mr. Fox also will he addressing you in closing arguments. He's appearing here *pro se,* as you recall I told you earlier, representing himself, which the law does permit. He's not here today as a licensed attorney." Nevertheless, Cunningham claims that the court allowed the jury to infer that Fox appeared as a licensed attorney. We reject this allegation because it is contradicted by the record in this case.

Further, as Hildebrand has noted on appeal, he and Fox stipulated to negligence at trial but challenged the issue of proximate cause and damages. We have concluded that Fox's suspension is irrelevant to the determinative issue—whether the stipulated negligence proximately caused damage to Cunningham. Accordingly, it is our view that the trial court properly excluded such evidence under Evid.R. 401 and Evid.R. 402, and we therefore overrule this assignment of error.

"VI. The trial court erred when it limited cross–examination of plaintiff's former attorneys, following their limited stipulation of scope of their negligence, nor the damages."

In the sixth assignment of error, Cunningham maintains that the trial court limited his cross-examination of Norman Fox and Jack Hildebrand. The record does not support these allegations. Cunningham initially moved to exclude the testimony of Fox and Hildebrand. After the defendants stipulated to their negligence, Cunningham decided to cross-examine them. Neither Fox nor Hildebrand ever moved to limit this cross-examination. In fact, during the side bar discussion, Hildebrand's attorney stated:

"I am troubled about denying to the plaintiff's lawyer the opportunity, a fair opportunity to prove his case for whatever it might be worth, and I don't believe it's worth anything. But I am troubled that he might some day go to the Court of Appeals with the argument that he was unduly restricted in the presentation of his proof."

The trial court did not limit the scope of cross-examination. However, Cunningham urges that the court's "reaction" to their request to cross-examine Hildebrand had the effect of limiting their questions. The record, however, does not support this contention.

Cunningham also complains about having to proffer anticipated questions to the court before getting permission to cross-examine Hildebrand, thus eliminating the element of surprise essential to effective cross-examination. However, Cunningham's attorney volunteered to make this proffer without a request from opposing counsel or the court, stating, "I would be happy to proffer to the Court the questions that I would ask him so that you can rule in advance of the testimony." In view of this posture, this argument also lacks merit, and we reject this assignment of error.

"VII. Defendants' motions for JNOV were untimely because the record does not document an objection to any inconsistency between interrogatory answers and verdict, prior to the discharge of the jury."

In the seventh assignment of error, Cunningham once again contends that Fox and Hildebrand waived the arguments made in their motions for judgment

notwithstanding the verdict. Cunningham urges that Fox and Hildebrand failed to timely object to the inconsistencies between the jury's answers to the interrogatory number two and the general verdict before the discharge of the jury.

Civ.R. 49(B) provides in part:

"When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

As the Supreme Court of Ohio noted in *O'Connell v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 229, 569 N.E.2d 889, 892:

"Generally, the federal courts of appeals have held 'that an objection to inconsistent answers is waived unless the party raises it before the jury is discharged. *Fernandez v. Chardon* (C.A.1, 1982), 681 F.2d 42, 58; *Skillin v. Kimball* (C.A.1, 1981), 643 F.2d 19, 19–20; *Tennessee Consolidated Coal Co. v. United Mine Workers of America* (C.A.6, 1969), 416 F.2d 1192. The purpose of the rule is to promote the efficiency of trials by permitting reconciliation of inconsistencies without the need for a new presentation of the evidence to a different trier.' *Haehnlein v. Henry* (1987), 41 Ohio App.3d 233, 234, 535 N.E.2d 343, 344."

However, in *O'Connell* the court held that the plain error doctrine applied to cases where a party failed to object to inconsistencies in jury interrogatories. *Id.* Further, "[i]f the inconsistency cannot be reconciled, the court has discretion to select the appropriate relief under Civ.R. 49(B)." *Lathan v. Pennington* (Nov. 18, 1999), Cuyahoga App. No. 75198, unreported, 1999 WL 1044510, citing *Colvin v. Abbey's Restaurant, Inc.* (1999), 85 Ohio St.3d 535, 709 N.E.2d 1156.

Upon review of the record, we have concluded that Fox and Hildebrand did not waive their right to file JNOV motions. Accordingly, we overrule this assignment of error.

"VIII. The trial court granted JNOV against the manifest weight of the evidence."

In the eighth assignment of error, Cunningham challenges the court's JNOV order based upon the Railway Labor Act, Section 151 *et seq.*, Title 45, U.S. Code. Cunningham urges that his former attorneys could have had him reinstated by Continental under this federal statute without satisfying Continental's written grievance procedure. Cunningham bases this assignment of error on the testimony of his labor law expert, Bruce Elfvin, Esq. At trial, Elfvin testified that

under the Railway Labor Act, "you do not necessarily have to submit it [a grievance] in writing."

Elfvin's testimony does not support Cunningham's contention that "Continental's grievance procedure simply did not comply with the Railway Labor Act." In fact, Cunningham fails to cite any expert testimony or specific federal provisions to support his factual contention in this regard. App.R. 16(A)(7). Thus, we reject this assignment of error.

"IX. The trial court erred when it denied plaintiffs' Rule 60(A) motion to correct the record to reflect that it constructively dismissed plaintiffs' emotional distress and spousal claims against the Fox defendants, as well as Hildebrand."

In the final assignment of error, Cunningham claims that the trial court erred in denying his Civ.R. 60(A) motion to correct the post-remand *nunc pro tunc* entry, filed on December 13, 1999, "to specify that Plaintiffs' emotional distress and loss of consortium and other derivative spousal claims also are dismissed as to Norman A. Fox and the law firm of Fox & Coury formerly known as Summers, Fox, Coury & McGinty Co."

Subsequent to briefing, this court dismissed Cunningham's appeal a second time for lack of a final appealable order. In an order dated August 9, 2000, we noted Cunningham's claim for emotional distress and his wife's derivative loss of consortium claim remained pending against Fox and his law firm. During the second remand of this case, Fox filed a motion to dismiss these remaining claims. In a journal entry filed on September 22, 2000, the trial court granted the motion of Fox and his firm to dismiss the remaining emotional distress and loss of consortium claims. This order effectively rendered the ninth assignment of error moot. Accordingly, we overrule it and affirm the judgment of the trial court.

*Judgment affirmed.*

JAMES J. SWEENEY, P.J., and COLLEEN CONWAY COONEY, J., concur.