MUEHRCKE, Appellee and Cross–Appellant.

v.

HOUSEL et al., Appellants and Cross–Appellees.

[Cite as *Muehrcke v. Housel,* 181 Ohio App.3d 361, 2008-Ohio-4445.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89470.

Decided Sept. 4, 2008.

Stafford & Stafford Co., L.P.A., Vincent A. Stafford, Joseph G. Stafford, and Gregory J. Moore, for appellee and cross-appellant.

Gallagher Sharp, Alan M. Petrov, Monica A. Sansalone, Holly M. Olarczuk–Smith, and Timothy J. Fitzgerald, for appellants and cross-appellees.

JAMES J. SWEENEY, Administrative Judge.

{¶ 1} Upon reconsideration, this opinion is the court's final, journalized decision in this appeal. The court's announcement of decision, previously released on June 12, 2008, is hereby vacated.

{¶ 2} Defendants-appellants and cross-appellees, Robert V. Housel and others ("Housel"), appeal from a judgment following a jury trial in the Court of Common Pleas. Pursuant to that judgment, Housel was found to have committed legal malpractice and was ordered to pay damages in the amount of $179,166.66 plus costs to plaintiff-appellee and cross-appellant, Robert Muehrcke, M.D. ("Robert"). For the following reasons, we affirm in part and reverse in part.

{¶ 3} In 1996, Robert was involved in a serious automobile accident. He hired attorney Housel to pursue his claims against the tortfeasor and various insurance companies. Following a settlement with the tortfeasor's insurer in the amount of $2,500,000, Housel filed suit against Robert's insurer, Indiana Insurance Company. Claims were made on behalf of Robert, his wife Laura, and their minor daughter, Susan (collectively, "the Muehrckes"). Both Laura's and Susan's claims were solely for loss of consortium.

{¶ 4} In June 2001, a jury awarded $9,377,252 to Robert, $1,000,000 to Laura, and $500,000 to Susan. Shortly thereafter, Robert and Laura settled with Indiana Insurance for $3,000,000. In addition, in exchange for a waiver of all future claims, Indiana Insurance agreed to pay an additional $2,000,000 to Robert, with a specific award of $50,000 allocated to Susan. Robert and Laura signed the release provided by Indiana Insurance, which waived any future claims for bad faith, prejudgment and postjudgment interest, and attorney fees.

Included in this release was a provision that the $50,000 award for Susan be placed in escrow pending approval by the probate court of the settlement of Susan's claim. In the release, both Robert and Laura agreed to indemnify Indiana Insurance in the event that a dispute arose concerning Susan's allocation. Both Robert and Laura admit that they read and signed this release. However, both parties claim that this is the first time that they became aware of the necessity of probate court approval.

{¶ 5} Because Susan was a minor, the probate court determination and approval was required as to the portion of the settlement funds to be allocated to her. Housel provided blank probate forms to the Muehrckes to sign and subsequently[1] filed an application seeking to appoint Laura as guardian of Susan's estate and an application to settle Susan's claim in the amount of $5,000. Both of these applications were denied by the trial court.

{¶ 6} Housel telephoned the Muehrckes, told them of the denial, and informed them that the amount required to settle Susan's claim could be up to $500,000. The relationship between the parties deteriorated very quickly at this point, resulting in Housel filing a notice of withdrawal as legal counsel for the Muehrckes. Housel claims that he withdrew because of the conflict of interest between Robert, Laura, and Susan. Specifically, Housel claims that he became concerned that Robert and Laura wanted Susan to receive only $500 or $5,000, amounts significantly less than the amount awarded to her by the jury and in the settlement. The Muehrckes claim that Housel misrepresented the amount it would take to settle Susan's claims. Specifically, they claim that Housel told them he was "friends" with the judge and could get the matter approved for as little as $500.

{¶ 7} Although Housel failed to file a formal motion to withdraw, the probate court accepted his notice to withdraw, and the Muehrckes obtained other counsel to handle their probate claims. An amended application to settle Susan's claim in the amount of $50,000 was filed shortly thereafter by new counsel.

{¶ 8} In January 2002, the probate magistrate issued a recommendation that Susan's estate be awarded $230,000. In that recommendation, the magistrate determined that since the jury's award of $500,000 was 4.6 percent of the total jury award, the same percentage should be applied to the settlement award of $5,000,000. He further determined that a conflict of interest existed between Laura and Susan, since any decrease in Susan's award would increase the amount available to Laura and Robert. The magistrate denied Laura's application to be appointed guardian and instead appointed Richard Koblentz as guardian of Susan's estate. Upon approval by the probate court, Koblentz conducted discov-

---

1. These forms were filed with the probate court on or about October 23, 2001.

ery in order to determine the proper amount to be awarded to Susan's estate. At a hearing in September 2006, Koblentz argued that Susan was entitled to $625,000. Housel was added as a party and argued that Susan was entitled to $345,000. Ultimately, the probate court adopted the magistrate's recommendation and awarded $230,000 to Susan's estate.[2]

{¶ 9} In March 2004,[3] the Muehrckes filed a complaint against Housel, seeking compensatory and punitive damages for claims of legal malpractice and negligent infliction of emotional distress.

{¶ 10} Following a six-day jury trial that began December 4, 2006, the Muehrckes' claims for negligent infliction of emotional distress and punitive damages were dismissed by the trial court upon Housel's motion for a directed verdict. However, the jury found for the Muehrckes on the claim of legal malpractice and awarded them damages in the amount of $179,166.66.

{¶ 11} Immediately following the trial, both parties filed postverdict motions, including a motion for judgment notwithstanding the verdict ("JNOV") or new trial, motions for prejudgment and postjudgment interest, costs and expenses, and motions for sanctions and attorney fees. On January 29, 2007, following a hearing, all motions were denied except for the postjudgment interest.[4]

{¶ 12} Housel timely appealed and raises six assignments of error for our review. On cross-appeal, the Muehrckes assert three cross-assignments of error.

{¶ 13} "I. The trial court erred in denying appellants' motion for directed verdict, and later their motion for judgment notwithstanding the verdict, because appellee failed to present sufficient evidence to demonstrate that appellants breached any duty owed to appellee, Dr. Muehrcke.

{¶ 14} "II. The trial court erred in denying appellants' motion for directed verdict, and later their motion for judgment notwithstanding the verdict, because appellee failed to present sufficient evidence to demonstrate that any alleged breach of duty proximately caused damages to appellee, Dr. Muehrcke."

---

2. After expenses and legal fees, the net amount allocated to Susan was $145,766.63.

3. The original suit for malpractice was filed in October 2002 but was voluntarily dismissed by Robert.

4. Our review of the record does not show that the trial court ruled on the motions for sanctions and attorney fees. However, if the trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled. See *Maust v. Palmer* (1994), 94 Ohio App.3d 764, 769, 641 N.E.2d 818. Since the trial court failed to rule on either motion, both motions are therefore deemed denied.

■ {¶ 15} The standards applicable to a motion for directed verdict and a motion for JNOV are the same. Both motions should be granted only if the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmovant. *Cunningham v. Hildebrand* (2001), 142 Ohio App.3d 218, 224, 755 N.E.2d 384; *Altmann v. Southwyck AMC–Jeep Renault* (1991), 76 Ohio App.3d 92, 95, 601 N.E.2d 122.

■ {¶ 16} The trial court does not weigh evidence or consider the credibility of the witnesses, but rather, reviews and considers the sufficiency of the evidence as a matter of law. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 693 N.E.2d 271. The trial court should grant a JNOV only if the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. Id. We are to conduct a de novo review of the trial court's decisions on these motions. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 656 N.E.2d 957; *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153.

■ {¶ 17} In an action for legal malpractice, the client has the burden of proving three elements: (1) that the attorney owed a duty or obligation to the client, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164. The alleged negligence of the attorney must be the proximate cause of the damage to the client. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 105–106, 538 N.E.2d 1058. Moreover, an action for legal malpractice requires proof of actual damages. *Lyle v. Aron* (Oct. 31, 1997), Lucas App. No. L–97–1128, 1997 WL 679528, at *3.

■ {¶ 18} For purposes of this appeal, we will address the issue of proximate cause first. Even assuming that the Muehrckes could establish that Housel's actions, or inactions, fell below the appropriate standard of care, they have not shown that his negligence proximately caused any damages.

■ {¶ 19} Probate court approval is required in the settlement of any minor's claim. R.C. 2111.18. Accordingly, when Susan received the $500,000 award following the jury trial, *any* future settlement of her award required the approval of the probate court, whether it was for $500, $5,000, or $50,000.[5] It is undisputed that the Muehrckes signed the release provided by Indiana Insurance, which specifically addressed this issue.[6] Whether they were informed by

---

5. The amounts that the Muehrckes wanted to settle Susan's claim for.

6. When a client reads and understands documents given to him by an attorney, his signature on those documents relieves the attorney of any liability due to injury resulting from those

Housel of what the final settlement *might* be does not change the undeniable fact that only the probate court, and not Housel or any other attorney, would determine the actual, and proper, allocation to Susan. Even if we accept the Muehrckes' allegations that Housel made claims that he was friends with the judge and golfed with him, we do not find that they could reasonably have relied on such statements, since Housel was not the judge, did not control the probate court proceedings, and could not assure the Muehrckes what portion of the settlement Susan would receive.

{¶ 20} The fact of the matter is that the probate court approved a settlement of Susan's claim in the same percentage of what the jury awarded her and allocated her the amount to which she was entitled. Thus, there is absolutely no evidence in the record that Housel's alleged negligence proximately caused any damage to the Muehrckes. The Muehrckes have simply not met their burden of showing actual damages, an essential element of a legal-malpractice claim.

{¶ 21} The Muehrckes nevertheless sought to show that they would not have proceeded with the settlement with Indiana Insurance had they known that Susan would receive an allocation of $230,000. Robert claims that he would have requested a higher settlement amount. Not only is this argument purely speculative,[7] it does not change the underlying fact that no matter what amount the parties had settled for, Susan's share of the settlement would still have to be approved by the probate court. In fact, given how the probate court ruled in the matter, it is likely that Susan would have received an even greater settlement than what she actually received. Any damages incurred by the Muehrckes are the result of their four-plus-year battle in probate court, where they sought to settle Susan's claims at an amount significantly less than what she was entitled to by the jury verdict rather than any action or inaction on the part of Housel.

{¶ 22} The Muehrckes have also alleged the following instances of legal misconduct by Housel: (1) he improperly withdrew as their counsel shortly before the probate hearing, (2) he required them to sign blank probate forms, and (3) he took legal fees prior to approval by the probate court. However, none of these allegations, even if true, allege any misconduct serious enough to fall below the appropriate standard of care or caused any damages to the Muehrckes.

---

documents. *Schneider, Smeltz, Ranney & LaFond, P.L.L. v. Kedia,* 154 Ohio App.3d 117, 2003-Ohio-4567, 796 N.E.2d 553. Here, there is absolutely no evidence in the record to suggest that Robert did not understand the meaning of the release he signed. Indeed, it is undisputed that Robert is a well-educated man and should have easily understood that Susan's claims were subject to probate court approval.

7. There is absolutely no evidence in the record that Indiana Insurance would have paid more than $2,000,000. In fact, Ronald Ripso, trial counsel for Indiana Insurance, testified that $2,000,000 was top dollar and that no further money was or would have been authorized.

{¶ 23} First, the evidence shows that the probate court accepted Housel's notice of withdrawal and allowed the Muehrckes to obtain new counsel before conducting the hearing. Moreover, all parties concede that Housel was required to withdraw given the conflict of interest between Laura and Robert and their minor child Susan. Next, with regard to the premature payment of attorney fees, the probate court did eventually approve the fees paid and concluded that Housel had provided "extraordinary services." Finally, Housel never used the probate forms that were signed in blank, so no harm was caused.

{¶ 24} Under the circumstances presented here, even when viewed in the light most favorable to the Muehrckes, the evidence is insufficient to show that Housel's alleged negligence caused any injury or proximately caused any damages to the Muehrckes.

{¶ 25} Assignments of error I and II are sustained.

{¶ 26} "VI. The trial court erred in denying appellants' motion for sanctions and attorney fees pursuant to Civ.R. 11 and R.C. 2323.51."

{¶ 27} In this assignment of error, Housel argues that the trial court erred in failing to find that counsel for Muehrcke engaged in frivolous conduct as defined by R.C. 2323.51. Housel also argues that the trial court erred in failing to award attorney fees as a sanction for the frivolous conduct.

{¶ 28} R.C. 2323.51 governs awards of attorney fees as a sanction for frivolous conduct. The statute states:

{¶ 29} "(A)(2) 'Frivolous conduct' means either of the following:

{¶ 30} "(a) Conduct * * * [a] party to a civil action, * * * or of * * * [an] other party's counsel of record that satisfies either of the following:

{¶ 31} "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal.

{¶ 32} "(ii) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."

{¶ 33} R.C. 2323.51 does not mandate an award of attorney fees. *Papadelis v. Makris*, Cuyahoga App. No. 84046, 2004-Ohio-4093, 2004 WL 1753128. Rather, the decision to grant or deny attorney fees is within the sound discretion of the trial court. Id.; *Taylor v. Franklin Blvd. Nursing Home, Inc.* (1996), 112 Ohio App.3d 27, 677 N.E.2d 1212; *Evans v. Bossin* (1995), 107 Ohio App.3d 544, 546, 669 N.E.2d 87. A trial court's decision to grant or deny a request for attorney fees will not be disturbed absent an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable.

{¶ 34} Our review of the record indicates that this was a complex, protracted, and acrimonious litigation. Indeed, both parties filed numerous motions for sanctions and attorney fees during the course of the trial and this appeal. While we would not have found an abuse of discretion had the trial court determined that both parties engaged in frivolous conduct, we do not find the trial court's decision not to find frivolous conduct to be unreasonable, arbitrary, or unconscionable. Accordingly, we find no abuse of discretion in the trial court's decision to deny Housel's motion for sanctions.

{¶ 35} Assignment of error VI is overruled.

{¶ 36} "III. The trial court erred in denying appellants' motion for a new trial, as the jury verdict is against the manifest weight of the evidence.

{¶ 37} "IV. The trial court erred in denying appellants' motion for a new trial, as the amount of damages awarded is not supported by the evidence, but rather is the result of passion and/or prejudice.

{¶ 38} "V. The trial court erred in allowing appellee's expert, Dale Pelsozy, to offer opinion testimony that lacked proper foundation under Evid.R. 703 and by precluding appellant from thoroughly cross-examining Mr. Pelsozy regarding bias."

{¶ 39} Housel's remaining three assignments of error are moot in light of our disposition of assignments of error I and II, and we decline to address them pursuant to App.R.12 (A)(1)(c).

## CROSS–APPEAL

{¶ 40} "Cross–Assignment of Error I. The trial court erred by denying appellee's motion for pre-judgment interest.

{¶ 41} "Cross–Assignment of Error II. The trial court erred by denying appellee's motion for sanctions and attorney fees pursuant to Civ.R. 11 and Ohio Revised Code Section 2323.51.

{¶ 42} "Cross–Assignment of Error III. The trial court erred by granting the appellants' motion for directed verdict relating to appellee's claims for negligent infliction of severe emotional distress and punitive damages."

*Prejudgment interest, sanctions and attorney fees, punitive damages*

{¶ 43} In light of this court's decision on Housel's first and second assignments of error, the Muehrckes are not entitled to prejudgment interest, sanctions, attorney fees, or punitive damages as requested. Accordingly, cross-assignments of error I, II, and III are overruled.

*Negligent infliction of emotional distress*

{¶ 44} In Ohio, recovery for negligent infliction of emotional distress is limited to such instances as where one was a bystander to an accident or was in fear of physical consequences to his or her own person. *Bunger v. Lawson* (1998), 82 Ohio St.3d 463, 466, 696 N.E.2d 1029; *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 85–86, 652 N.E.2d 664; *High v. Howard* (1992), 64 Ohio St.3d 82, 85–86, 592 N.E.2d 818 (overruled on other grounds). A claim for negligent infliction of emotional distress is recognized "only where there is cognizance of a real danger, not mere fear of non-existent peril." *Criswell v. Brentwood Hosp.* (1989), 49 Ohio App.3d 163, 165, 551 N.E.2d 1315.

{¶ 45} Here, Robert and Laura Muehrcke testified that they have suffered depression, emotional stress, anxiety, and discomfort as a result of Housel's actions and the pending litigation. The Muehrckes clearly fail to demonstrate that they were subject to actual physical peril and suffered severe and debilitating emotional injuries as a result. Accordingly, the trial court did not err in directing a verdict in favor of Housel on this issue.

{¶ 46} Cross-assignment of error III is overruled.

Judgment affirmed in part
and reversed in part.

KILBANE and BOYLE, JJ., concur.