OPINION *Page 2 
{¶ 1} Plaintiff-appellant Alanson Taylor appeals the decision of the Belmont County Common Pleas Court granting summary judgment in favor of defendant-appellee Attorney Tracey Lancione Lloyd. The main issue is whether there is a genuine issue of material fact as to whether the one-year statute of limitations ran on appellant's legal malpractice claim. For the following reasons, the entry of summary judgment is affirmed as appellant discovered or should have discovered the alleged instances of legal malpractice set forth in his complaint long before new counsel so advised him.
 STATEMENT OF THE CASE {¶ 2} In 1982, appellant and his former wife divorced. The court ordered appellant to pay alimony [hereinafter spousal support] of $700 per month and reserved jurisdiction over the issue. Under the decree, spousal support was increased to $950 upon one of the children reaching emancipation. In 1985, he unsuccessfully moved to reduce spousal support. In fact, under the terms of the divorce decree, when his child support terminated that year for his youngest child, spousal support was increased to $1,000. In 1986, appellant again moved for a reduction. This motion was granted, decreasing his monthly obligation back to $700. In October 1996, his former wife remarried.
 {¶ 3} Thus, he retained Attorney Lloyd to file a motion to reduce or terminate his spousal support obligation. The prior order of support did not contain a termination upon remarriage clause. Attorney Lloyd filed the motion in November 1996. The motion was heard on January 6, 1997. Appellant did not attend the hearing as he lived in Florida and was just starting a new job. Stipulations were entered on past incomes, and appellant was permitted to submit financial information on his new job by later filing. His former wife testified as to her financial status and claimed that the amount of her support was based in part on an uneven property distribution. She said that she received only the equity in the house, which netted her $20,000 some years later, and that he received stock from his employer, a pension plan covering twenty-three years of marriage, a car and a travel trailer. (Jan. 6, 1997 Tr. 5-6). *Page 3 
 {¶ 4} On January 27, 1997, the court reduced appellant's obligation to $650 per month and thus effectively denied his request to terminate spousal support. Attorney Lloyd handled the appeal for him. On August 4, 1998, a different panel in this court upheld the trial court's decision.Taylor v. Taylor (Aug. 4, 1998), 7th Dist. No. 97BA10. We stated in pertinent part:
 {¶ 5} "A hearing was held regarding appellant's motion on January 6, 1997. * * * Testimony was also presented to indicate that the spousal support ordered by the trial court at the time of divorce was associated with the unequal distribution of marital property in favor of appellant. (Tr. 5-7). Appellant did not appear at said hearing, however, he was represented by counsel and was given thirty days to submit financial documentation. * * *
 {¶ 6} "In Dunaway v. Dunaway (1990), 53 Ohio St.3d 227,560 N.E.2d 171, the Ohio Supreme Court stated at its syllabus:
 {¶ 7} "`Where a dependent divorced spouse remarries, the obligation of the first spouse to pay sustenance alimony terminates as a matter of law, unless (1) the sustenance alimony constitutes a property settlement, (2) the payment is related to child support, or (3) the parties have executed a separation agreement in contemplation of divorce that expressly provides for the continuation of sustenance alimony after the dependent spouse remarries.' (Emphasis added).
 {¶ 8} "A clear reading of Dunaway reveals that the remarriage of a party receiving spousal support does not automatically terminate an ex-spouse's obligation to pay such support as ordered. There was unrefuted evidence presented at the hearing on appellant's motion which indicated that the spousal support ordered by the trial court at the time of divorce was associated with the unequal distribution of marital property in favor of appellant. (Tr. 5-7). There was additional, unrefuted testimony offered to indicate that appellee has a medical condition which affects her earning ability. (Tr. 9). Further, the parties' divorce decree filed on December 15, 1982 reveals that appellant's spousal support payments to appellee were related to his child support obligation.
 {¶ 9} "Given the foregoing facts, we find that the case at bar falls within two of the three exceptions enumerated by the Ohio Supreme Court in Dunaway, supra. *Page 4 
Therefore, we conclude that appellant's obligation to make alimony (spousal support) payments to appellee did not terminate on the date appellee remarried and the trial court did not abuse its discretion in overruling appellant's motion." Taylor, 7th Dist. No. 97BA10.
 {¶ 10} Appellant indicated that he read our decision. (Depo. 40). Appellant also stated that he read Ohio case law on spousal support both before and after our decision was released. (Taylor Depo. 39). A letter from Attorney Lloyd dated August 10, 1998 confirmed that appellant was provided with a copy of our decision. Appellant also spoke to Attorney Lloyd about the decision. She advised that he could appeal to the Supreme Court, since she opined that the trial court's order was unfair, or that he could wait until he could demonstrate another change in circumstances. He decided against appealing to the Supreme Court. According to appellant, the attorney-client relationship between appellant and Attorney Lloyd ended when the appellate opinion was released on August 4, 1998. (Taylor Depo. 35).
 {¶ 11} In late March of 2004, appellant "did the math" based upon the statement in our 1998 appellate decision that spousal support was based upon an unequal property division. Upon making his calculations, "it just rang a big bell that something was amiss here regarding that case of discontinuing spousal support." A week later, he called Attorney Gary Gottfried in Columbus to set up an appointment to discuss the matter. (Taylor Depo. 40).
 {¶ 12} On April 2, 2004, appellant first spoke to this attorney. Following that discussion, Attorney Gottfried informed appellant that there was a likelihood that Attorney Lloyd poorly represented him and that the result would have been different if the case had been handled properly. (Gottfried Affidavit). Appellant then retained Attorney Gottfried to file a motion to modify spousal support.
 {¶ 13} The latest modification motion asked that spousal support be terminated based upon appellant's August 14, 1998 discharge in bankruptcy. The motion explained that his former wife had been listed as a creditor in that action and pointed out that his former wife previously testified that the spousal support obligation was the result of an unequal property settlement. The motion set forth law providing that *Page 5 
spousal support can be discharged in bankruptcy if it is actually in the nature of a property division.
 {¶ 14} In March 2005, appellant's former wife agreed to the termination of spousal support. According to the affidavit of the former wife's attorney, who was also her attorney at the 1997 modification hearing, the termination entry was agreed upon due to the bankruptcy discharge.
 {¶ 15} Appellant then retained another attorney who filed the within legal malpractice complaint against Attorney Lloyd on April 1, 2005. His complaint claimed that Attorney Lloyd was negligent by failing to secure his presence and testimony at the modification hearing, failing to rebut his former wife's testimony on the nature of the spousal support and failing to prepare for the hearing. He claimed that his November 1996 motion would have been granted by the trial court had he been properly represented. He also posited that he was unaware of the malpractice until advised by Attorney Gottfried on April 2, 2004.
 {¶ 16} Attorney Lloyd filed her answer on April 18, 2005, denying negligence and setting forth a statute of limitations defense. After discovery, Attorney Lloyd filed a summary judgment motion on February 28, 2006 containing three arguments.
 {¶ 17} First, she alleged that the one-year legal malpractice statute of limitations ran because with reasonable diligence appellant should have discovered the facts constituting his claim prior to the time that Attorney Gottfried told him. She noted that appellant had been married three times, divorced twice and involved in prior motions to modify support. She also noted that he admitted to researching Ohio case law on spousal support both before and after the appellate decision was released in 1998. (Taylor Depo. 39). She pointed out that the 1998 appellate decision was admittedly the very impetus for him finally calculating the alleged disparity in 2004. She concluded that the cognizable event was in August 1998, when the appellate decision was rendered and the attorney-client relationship was terminated.
 {¶ 18} Second, Attorney Lloyd's summary judgment motion essentially argued that there was no genuine issue of material fact regarding her negligence. In arguing that she properly represented appellant, she stated that appellant did not want to attend the hearing because he was starting a new job in Florida and that he did not *Page 6 
want her to seek a continuance. She noted that the hearing was on the former wife's changed circumstances, not appellant's.
 {¶ 19} This argument led into her final contention that she should be granted partial summary judgment because appellant failed to mitigate his damages. She opines that he paid unwarranted spousal support because he failed to file a motion to modify spousal support after his former wife's claim was released in bankruptcy. As she pointed out, on August 14, 1998, after the attorney-client relationship ended, appellant was discharged in bankruptcy. She explained that she was not his bankruptcy attorney. She also emphasized appellant's deposition testimony that although he told her he had filed bankruptcy, he never told her that he listed his former wife as a creditor and never subsequently told her that he had been discharged. She notes that the discharge was the reason appellant's former wife agreed to the termination of support, citing the affidavit of the former wife's attorney. Besides that affidavit, she attached her own deposition, appellant's deposition and the transcript of the January 6, 1997 modification hearing.
 {¶ 20} Appellant responded to the summary judgment motion by urging that Attorney Lloyd assured him that once the obligee spouse remarries, the spousal support obligation is over. He said that he told her he would come to the hearing if it were necessary, but she seemed sure they would win. He also responds to Attorney Lloyd's mitigation arguments by urging that she should have told him that his spousal support was dischargeable in bankruptcy. He concluded that the cognizable event was when Attorney Gottfried advised him that Attorney Lloyd misrepresented him. He attached Attorney Gottfried's affidavit describing Attorney Lloyd's negligence and some other unattested paperwork.
 {¶ 21} On August 21, 2006, the trial court granted summary judgment. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 22} Appellant's sole assignment of error provides:
 {¶ 23} "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT." *Page 7 
 {¶ 24} On appeal, appellant argues that there is a genuine issue of material fact as to when he discovered or in the exercise of reasonable care should have discovered that Attorney Lloyd's legal representation fell below the appropriate standard of care. More specifically, he urges that there is a genuine issue as to whether he should have discovered the alleged malpractice prior to April 2, 2004, when advised by Attorney Gottfried, since he filed his complaint one year later on April 1, 2005.
 LAW {¶ 25} Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Summary judgment can only be granted if it appears from the aforementioned evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-movant, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C). We review the propriety of granting summary judgment de novo without regard to the trial court's decision or the reasons therefor. See Comer v. Risko,106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8.
 {¶ 26} A claim for legal malpractice shall be commenced within one year after the cause of action accrued. R.C. 2305.11(A). It has been held that a cause of action for legal malpractice accrues and the one-year statute of limitations commences to run either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. Omni-Food Fashion, Inc. v. Smith (1988),38 Ohio St.3d 385, 387-388. Stated another way, the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. Zimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, 58. *Page 8 
 {¶ 27} For the purposes of determining this discovery date, it has been stated that the trial court must explore the particular facts of the action and determine: (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; (2) whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him; and (3) whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury. Omni-Food, 38 Ohio St.3d at 388. We do note, however, that the later decision in Zimmie did not reiterate this list of considerations. We also note that the Supreme Court has recently determined that a criminal defendant should be aware of his claim regarding trial errors at the time his conviction is entered. Smith v. Conley,109 Ohio St.3d 141, 2006-Ohio-2035, ¶ 5 (also failing to set forth the threeOmni-Food considerations).
 {¶ 28} In Zimmie, the Supreme Court found that the invalidation of a prenuptial agreement was the cognizable event for purposes of the discovery rule even though an appeal was pending on the ruling and damages were not fully ascertainable. Zimmie, 43 Ohio St.3d at 58 (where termination of the relationship had already occurred). The Court stated that an injured person need not be aware of the full extent of theinjury before there is a cognizable event. Id. It is sufficient thatsome noteworthy event, the cognizable event, has occurred which shouldalert a reasonable person that substandard representation hasoccurred. Id.
 {¶ 29} The Court then declined to adopt a rule that one is entitled to exhaust his appeals before the statute of limitations runs. Id. Rather, the Court reiterated that each case depends on the facts involved. Id. at 58-59. The Court then upheld the grant of summary judgment in that case because the legal malpractice action was not filed until almost four years after the date the trial court invalidated the prenuptial agreement even though the plaintiff argued that he was not aware of malpractice until the appellate court's decision. Id. at 59.
 ANALYSIS {¶ 30} Here, appellant filed for bankruptcy in October 1996 with the assistance of a bankruptcy attorney. His former wife was listed as a creditor even though he *Page 9 
believed that spousal support was not dischargeable in bankruptcy. He did not ask his bankruptcy attorney for an explanation or later sue that attorney. Attorney Lloyd did not represent appellant in the bankruptcy action and was not informed that he listed his former wife as a creditor. Appellant was not discharged in bankruptcy until August 14, 1998, which is after his attorney-client relationship with Attorney Lloyd ended. Appellant did not inform Attorney Lloyd that he and thus his former wife's claims had been discharged in bankruptcy. Lastly, we must point out that his legal malpractice complaint essentially argues that the spousal support was not in the nature of property division because he contends that Attorney Lloyd should have rebutted this proposition set forth by his former wife. That is, his complaint deals with the alleged lack of rebuttal presented at the January 1997 hearing, which was long before any discharge in bankruptcy.
 {¶ 31} We must point out here that due to the statute of limitations issue, we are not reaching (or even being asked to reach) the issue of whether there are genuine issues surrounding Attorney Lloyd's acts or omissions in her representation. Although the above statements sound in the merits, they are also relevant to appellant's constructive knowledge and his duty to timely investigate the facts of his legal matters. The following considerations are even more pertinent.
 {¶ 32} Although his counsel allegedly informed him that the matter was a simple formality, the trial court refused to terminate spousal support due merely to the former wife's remarriage. Nevertheless, even if that judgment could be considered a cognizable event, the time would not start running because the attorney-client relationship had not yet ended as Attorney Lloyd represented appellant in his appeal of that judgment. Appellant conceded, however, that the attorney-client relationship terminated at the time of our August 4, 1998 decision. For the following reasons, we find that decision to be a cognizable event.
 {¶ 33} Appellant's 2005 malpractice action claims that Attorney Lloyd was negligent for failing to refute (through discovery, file review, ensuring appellant's presence, etc.) various aspects of his former wife's testimony and the accompanying property division arguments presented at the 1997 modification hearing. Yet, this court's 1998 appellate decision specifically relied on the fact that certain testimony was *Page 10 
"unrefuted." Twice this court emphasized that testimony was presented that the spousal support was associated with an unequal property division. Furthermore, we clearly quoted and applied Ohio Supreme Court law to refute appellant's claims on appeal that remarriage automatically requires termination of spousal support.
 {¶ 34} Our decision was received by appellant from Attorney Lloyd immediately after its release. As aforementioned, appellant indicated at deposition that he read our decision. Thus, appellant was aware of the claimed injury regarding the limited scope of the hearing or the effect of that scope in August 1998 when he read our decision. He was also aware of the finding therein that spousal support could continue after remarriage based upon an uneven property distribution, which was found to exist in his case by virtue of testimony he failed to refute. Moreover, he did case law research before and after our 1998 decision, which led him to believe that his spousal support award should have in fact been terminated.
 {¶ 35} Still, he admittedly failed to take the initiative regarding the alleged disparity in the marital property distribution until March 2004, when he decided to "do the math." At that point, he finally decided to consult another attorney. We note that even if his discovery based upon his arithmetic was a later cognizable event, the complaint was still filed more than one year from that point. In any event, his putting off performing his calculations or checking into whether the division was in fact unequal does not toll the statute as a cognizable event had already occurred and a reasonable person would not have waited so long to make such calculation.
 {¶ 36} The injury here either was discovered or at the very least should have been discovered in the exercise of reasonable diligence prior to April 2, 2004 (when Attorney Gottfried informed appellant of his potential malpractice claim). There were various noteworthy events that when combined should have alerted a reasonable person to the existence of appellant's current allegations, those current allegations being that Attorney Lloyd could have presented rebuttal evidence on the issue of an unequal property division at the January 1997 hearing. Our decision was released in the month of August 1998. The attorney-client relationship ended at that time, and appellant was thereafter discharged in bankruptcy. *Page 11 
 {¶ 37} Other events, which are not cognizable events in themselves, added to the significance of the later cognizable event. For instance, there is the question of the underlying rationale behind the original 1982 divorce decree, which order failed to state that spousal support would terminate on remarriage. There is his bankruptcy attorney's 1996 listing of his former spouse as a creditor and appellant's failure to ask why even after his research indicated that court ordered payments of any kind are not dischargeable. Additionally, there is the 1997 denial of his termination motion by the trial court.
 {¶ 38} Appellant suggests that the statute of limitations did not begin running until the day a new attorney advised him that he had a potential legal malpractice claim. There are cases that use this event as the cognizable one. See, e.g., Easterwood v. English, 8th Dist. No. 82538, 2003-Ohio-6859; Case v. Landskroner (May 3, 2001), 8th Dist. No. 78147. Cf. Crystal v. Wilsman, 151 Ohio App.3d 512, 2003-Ohio-427, ¶ 27
(Cooney, J. dissenting in Eighth District, "The mere fact that [the plaintiff] waited more than seven years to consult with an attorney regarding her concern of undiscovered assets does not operate to extend her time to file for malpractice beyond the one-year limitation period."). However, those courts do not state the principle as the broad law of the case. Rather, the date the new attorney advised the client was characterized as the cognizable event only after applying the undisputed law on cognizable events to the facts of the case. The application of such a broad rule (that the date the new attorney advised the client is the date of the cognizable event) under the facts of the case before us would ignore the well-established holding that thecognizable event does not require actual discovery of the existence of a legal malpractice claim. See Zimmie, 43 Ohio St.3d at 58.
 {¶ 39} Instead, the test clearly revolves around when the plaintiff discovered or should have discovered the claim if he had used reasonablecare and diligence. Id. Constructive, rather than actual, knowledge is all that is required. Flowers v. Walker (1992), 63 Ohio St.3d 546, 549. Moreover, it is constructive knowledge of the facts, rather than knowledge of their legal significance, that starts the statute of limitations running under the discovery rule. Id. at 549. *Page 12 
 {¶ 40} Appellant had notice of a cognizable event requiring him to investigate the facts and circumstances relevant to his claim in order to pursue his remedies. See id. (outlining this duty to investigate). See, also, Omni-Food, 38 Ohio St.3d at 388 (asking whether reasonable person be on notice of need for further inquiry). At the very least, the clear language of our decision alerted or should have alerted appellant that his attorney allegedly failed to prepare for the hearing and/or failed to supplement with his rebuttal testimony or other data on the supposed mischaracterization of the spousal support as payment for an unequal property division. There is no genuine issue of material fact as to this conclusion, i.e. no reasonable person could hold in favor of the non-movant regarding such cognizable event.
 {¶ 41} True, there may be a fact issue as to actual discovery. However, actual discovery is irrelevant when there is no fact issue as to constructive discovery or as to when a plaintiff using reasonable diligence and care should have investigated the situation and discovered the facts of the claim. Here, even without investigation, appellant should have been aware of the failure to present evidence refuting his former wife's claim that her spousal support award was based upon an unequal property division, which claim was clearly relied upon by this court in its succinct 1998 decision.
 {¶ 42} Even assuming arguendo that appellant was not constructively aware of every possible instance of negligence or every possible legal argument supporting malpractice in the presentation of the modification motion, his constructive knowledge regarding the main facts of the case and regarding several complete examples of allegedly improper omissions was sufficient to start the statute at the time our decision was reached. As the Supreme Court has pronounced, an injured person need not be aware of the full extent of the injury before there is a cognizable event. Zimmie, 43 Ohio St.3d at 58. In other words, the plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations. Flowers,63 Ohio St.3d at 549.
 {¶ 43} In conclusion, the one-year statute of limitations would have lapsed in August 1999, more than five years before the April 1, 2005 filing of the malpractice complaint. Accordingly, appellant's legal malpractice action was time-barred by the one-year statute of limitations contained in R.C. 2305.11(A). *Page 13 
 {¶ 44} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., and Donofrio, J., concurs. *Page 1