[Cite as *Briggs v. Wilcox*, 2013-Ohio-1541.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98364**

# TRACY A. BRIGGS, F.K.A. MOELICH

PLAINTIFF-APPELLANT

vs.

# DARLENE A. WILCOX,
# D.B.A. DARLENE A. WILCOX, L.L.C.

DEFENDANT-APPELLEE

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-746206

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**ATTORNEYS FOR APPELLANT**

William A. Carlin
Mark W. Biggerman
Carlin & Carlin
29325 Chagrin Blvd.
Suite 305
Pepper Pike, OH   44122


**ATTORNEYS FOR APPELLEE**

Theresa A. Richthammer
Alan M. Petrov
Jamie A. Price
Gallagher Sharp
Bulkley Building, 6th Floor
1501 Euclid Avenue
Cleveland, OH   44115

SEAN C. GALLAGHER, J.:

**{¶1}** Plaintiff-appellant, Tracy A. Briggs ("Briggs"), appeals from the trial court's order that granted defendant-appellee, Darlene A. Wilcox, d.b.a. Darlene A. Wilcox L.L.C. ("Wilcox"), summary judgment and dismissed Briggs's legal malpractice complaint.[1] For the reasons that follow, the trial court's judgment is affirmed.

**{¶2}** Briggs, through her original counsel ("Bancsi"), commenced this legal malpractice case against Wilcox on January 19, 2011. Wilcox filed her answer and asserted multiple affirmative defenses, including that the complaint was barred by the statute of limitations, as well as judicial estoppel. The court directed the parties to file dispositive motions by January 17, 2012. The record contains motions filed by Wilcox to compel discovery and to have her requests for admissions deemed admitted. Wilcox had served the discovery on March 21, 2011. Thereafter, Briggs sought an extension of time to respond to the discovery, which Wilcox opposed. The trial court granted Wilcox's motion to compel and ordered Briggs to produce the discovery within 10 days of its order. The trial court denied Wilcox's subsequent motion for sanctions against Briggs; however, the court extended the discovery cutoff by 30 days for the limited purpose of obtaining Briggs's deposition.

---

[1] Although Wilcox's counterclaim for unpaid legal fees remains pending, the trial court's summary judgment order was certified as being final, with no just reason for delay pursuant to Civ.R. 54(B).

{¶3} On December 9, 2011, Briggs's new counsel entered an appearance and notice of substitution for Bancsi (Bancsi then became one of Briggs's expert witnesses in this case).

{¶4} Briggs's new attorneys moved to reopen discovery for a period of 60 days, which Wilcox opposed. The trial court extended the dispositive motion deadline to February 29, 2012. The parties exchanged expert reports. Briggs moved for a partial summary judgment order, and Wilcox sought a summary judgment order dismissing all of Briggs's claims. The trial court denied Briggs's motion and granted Wilcox summary judgment.

{¶5} The facts giving rise to this legal malpractice case emanate from Wilcox's representation of Briggs in her divorce action. The relevant facts will be set forth in resolving Briggs's assignments of error. Wherever in dispute, the facts in this opinion will be construed under the applicable summary judgment standard that requires them to be viewed in a light most favorable to the nonmoving party.

{¶6} In her two assignments of error, Briggs contends that the trial court erred by denying her Civ.R. 56(F) motion and by granting summary judgment in favor of Wilcox.

{¶7} The trial court granted Wilcox's motion for summary judgment without opinion. Wilcox had argued that she was entitled to summary judgment on the following three grounds: (1) Briggs failed to establish a claim for legal malpractice due to her voluntary settlement of the underlying divorce; (2) Briggs's complaint was barred by the statute of limitations; and (3) Briggs's complaint was barred by judicial estoppel.

Briggs alleges in this appeal that none of these grounds justified the trial court's order in favor of Wilcox. Wilcox continues to defend the trial court's judgment, arguing it was supported by each of these independent grounds.

{¶8} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. We independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.). Summary judgment is proper when the moving party establishes that

> (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

1.  Voluntary Settlement of Underlying Divorce Action

**{¶9}** The judgment entry of divorce was journalized on November 2, 2009, and noted "the parties have, prior to this hearing, entered into a Separation/In Court Agreement which is fair, just and equitable." Briggs, along with her now former spouse ("Moelich"), executed a waiver acknowledging and representing that they had "1) voluntarily entered into the separation agreement; 2) read the terms of the separation agreement; 3) made full disclosure of all marital assets; and 4) found the agreement to be fair, just, and equitable."

**{¶10}** Briggs now maintains that she did not know the value of the marital assets and that Wilcox committed malpractice by allegedly not uncovering or discovering this fact. Briggs also asserts that Wilcox told her she could not go to trial because the magistrate would not allow it.

> To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss.

*Vahila v. Hall*, 77 Ohio St.3d 421, 1997-Ohio-259, 674 N.E.2d 1164, syllabus. The plaintiff's failure to prove any one of these elements entitles the defendant-attorney to summary judgment. *Woodrow v. Heintschel*, 194 Ohio App.3d 391, 2011-Ohio-1840, 956 N.E.2d 855, ¶ 17 (6th Dist.); *Williams-Roseman v. Owen*, 10th Dist. No. 99AP-871, 2000 Ohio App. LEXIS 4254 (Sept. 21, 2000).

**{¶11}** Briggs is dissatisfied with the settlement terms to which she agreed and contends her decision to settle was the result of ineffective assistance of counsel. It is her belief that she would have received more had she proceeded to trial. Wilcox asserts that Briggs's voluntary settlement of the underlying divorce action bars her claims.

**{¶12}** A review of the record illustrates a contentious divorce. After the final judgment was issued, Briggs expressed her belief that she had not received "income equalization" or a "fair distribution of property." Briggs's post-decree conduct became the subject of contempt proceedings during which she terminated Wilcox as her attorney and hired Bancsi.

**{¶13}** Briggs pursued relief from pre-decree judgment entries as well as the final judgment divorce decree pursuant to Civ.R. 60(B), which the trial court denied. Briggs voluntarily dismissed her appeals of those rulings. *Briggs v. Moelich*, 8th Dist. Nos. 95235 and 94603 (Sept. 3, 2010).[2]

**{¶14}** Briggs, through her experts, details a host of alleged deficiencies in Wilcox's representation. Her main focus is upon the agreement to treat December 1, 2008, as the date of divorce and Wilcox's alleged representations to Briggs about the value, or lack thereof, of her former spouse's employment stock options. A review of the record establishes that Wilcox did obtain statements for Moelich's Eaton Stock

---

[2] Subsequently, Briggs and Moelich filed cross-motions to show cause in the trial court related to post-decree conduct. Briggs was found in contempt and appealed the ruling. We addressed her appeal in that matter and affirmed the trial court's judgment in *Briggs v. Moelich*, 8th Dist. No. 97001, 2012-Ohio-1049.

Option Plan ("ESOP") prior to the parties' executing the settlement agreement in the divorce action. Wilcox averred that said statements reflected a $0.00 value. She also relied upon the statements prepared by Ayco, the Moelichs' financial advisor, which valued the stock options at zero. Finally, Wilcox referred to the opinion of Moelich's counsel concerning the stock options, which was that they had a negative value as of late 2008.

{¶15} Originally, the parties had included a clause whereby the stock options and Moelich's other employment benefits, with two specified exceptions, would be divided. The judgment entry dated July 21, 2009, included the following provision:

> **2. Eaton Retirement Benefits and Deferred Compensation.** The parties agree that the entirety of the accounts held in the name of Jeffrey Moelich at Eaton Corporation, including monies vested in the Eaton Pension Plan, Eaton Savings Plan, EIC Executive Incentive Compensation and EIC Incentive Comp Deferral Plan II accounts, are marital property and will be divided with two exceptions: [referencing bonus payment for 2008 and a portion of the Eaton Savings Plan]. The date of the segregation of the assets above shall be December 1, 2008.

> Mr. Moelich also holds stock options at Eaton which the parties will either divide equally, or a payoff of the current value of the options will be arranged. The date of segregation of the stock options shall be determined at a future date.

{¶16} In the final settlement agreement, the parties agreed that Moelich would be awarded all marital interest in the ESOPs awarded him by Eaton during the marriage, and this provision explicitly provided that "this [provision] supersedes prior order." Among

other provisions, Briggs was awarded funds she had withdrawn from marital accounts prior to filing the divorce.

{¶17} Among other things, Briggs's experts are critical of the fact that the stock options were treated as having a zero value and that Briggs received no allocation of them.

{¶18} This court has previously noted,

> In many cases, an attorney will be faced with strategic choices, any one of which may lead to a favorable result for his client. An attorney must make an educated guess as to which course of action is most likely to succeed. The practice of law is not an exact science, however, and generally, when a client settles a claim, an attorney should not be subject to a client's malpractice claim in an effort to obtain additional monies as long as the attorney has made reasonable decisions in handling the case and represented his client competently.

*Schneider, Smeltz, Ranney & LaFond, P.L.L. v. Kedia*, 154 Ohio App.3d 117, 2003-Ohio-4567, 796 N.E.2d 553, ¶ 11 (8th Dist.),[3] citing *DePugh v. Sladoje*, 111 Ohio App.3d 675, 686, 676 N.E.2d 1231 (2d Dist.1996). In *Schneider*, the plaintiff complained that his counsel committed malpractice after he signed a settlement agreement. The terms of the final agreement differed from a prior version; however, the firm had provided it to plaintiff to review and execute, which he did. The final settlement agreement contained a clause that provided:

> each party fully understands all the terms herein set forth, which terms represent and constitute the entire understanding between them, and each has read this Agreement and finds the same to be in accordance with his and

---

[3] *Appeal denied, Schneider, Smeltz, Ranney & LaFond, P.L.L. v. Kedia*, 101 Ohio St.3d 1421, 2004-Ohio-123, 802 N.E.2d 153.

her understanding, and each does hereby voluntarily execute this Agreement and affix his or her signature hereto in the presence of the witnesses indicated below.[4]

Notwithstanding, Schneider stated he actually did not read the final agreement before he signed it. Schneider's malpractice claim was premised on his position that the final agreement contained terms different from what he had discussed, and agreed to, with his attorneys.

{¶19} This court held that the law firm had not breached a duty to its client as a matter of law and upheld summary judgment in the law firm's favor. *Id.* at ¶ 14, citing *Spatar v. Avon Oaks Ballroom*, 11th Dist. No. 2110-T-0059, 2002-Ohio-2443, ¶ 21 ("[The plaintiff] affirmed that he read the agreement and found it to be in accordance with his understanding. He cannot now contradict that statement to create a genuine issue of fact for trial."). This conclusion was reached based on the terms of the agreement in light of the factual circumstances presented and not by application of the professional judgment rule.[5]

{¶20} Wilcox testified that there were many difficulties negotiating any terms of settlement due to acrimony between the parties, compounded by restraining orders that were also in place. Consequently, matters were addressed and resolved through a series

---

[4] *Id.* at ¶ 13; *see also Muehrcke v. Housel*, 181 Ohio App.3d 361, 2008-Ohio-4445, 909 N.E.2d 135, fn. 6 (8th Dist.) ("Where a client reads and understands documents given to him by an attorney, his signature on those documents relieves the attorney of any liability due to injury resulting from those documents.").

[5] For that reason, Briggs's reliance on case law that addresses the professional judgment rule is inapposite.

of court orders. The record further supports Wilcox's testimony that she conducted discovery and that she was prepared to go to trial to resolve the remaining issues. Both Briggs and Wilcox were aware that Moelich had various benefits through his employment at Eaton Corporation, including "401K, pension, stock options, deferred compensation, [and] other employee benefits (auto allowance and insurance discount, financial services, health club reimbursement)." This was one of the factors they took into consideration in selecting a termination of marriage date. Further, Wilcox testified that the exact value of the stock options could not be determined until they were exercised. The documents that were obtained post-decree indicate that Moelich received a payment for forfeited shares but not until August 2010. Wilcox did investigate Moelich's employment benefits and spoke with individuals at Eaton about them. The record reflects that the attorneys made arrangements to offset monies from other sources in order to accommodate the division of property as agreed to by these parties because Eaton's policies prevented payments to Briggs from certain accounts.

{¶21} On the day the parties appeared for trial, they engaged in further negotiations. According to Briggs, the final settlement negotiations lasted from 9 a.m. to 8 p.m. The testimony reflects that Moelich was no longer willing to negotiate about the division of his stock options. This is curious because his position at that time, as communicated by his attorney, was that the stock options had a negative value. Nonetheless, Briggs voluntarily accepted that by executing the settlement agreement, which explicitly superseded the prior judgment entry that had allocated her a share of

these benefits. She essentially contends that Wilcox's statements confused her and led to her decision to enter the settlement agreement.

{¶22} Briggs also contends that Wilcox told her she could not go to trial and that the magistrate would not allow her to go to trial.[6] Even accepting those claims as true, they are directly contradicted by the terms of the waiver that she voluntarily signed. She cannot now contradict her previous statement in order to create a genuine issue of fact for trial. *Schneider*, *supra*.

{¶23} At her deposition, Briggs remained vague concerning her complaints about the settlement agreement and Wilcox's representation. Often she claimed to have been confused but could not articulate a clear basis for her confusion. Briggs maintained she signed the settlement agreement "because [she] was advised by counsel. [She] was told that was the best deal [she] was going to get and that [she] really didn't have a choice."

{¶24} Wilcox does not offer any expert to counter the opinion of Briggs's expert that there was a "blatant economic unfairness to the wife in the disposition of this case" or to counter the monetary value that Briggs's expert calculated for the stock options as of December 2008. Wilcox relies on Briggs's decision to enter the settlement agreement.

{¶25} Briggs's claim that Wilcox coerced her into executing the settlement agreement in this case is dubious. There is no evidence that Wilcox failed to discover any marital assets. However, it cannot be definitively established from this record that

---

[6] Ironically, Briggs also testified that she was told she "would have to go to court to obtain [stock] * * *."

Wilcox shared the relevant financial documents with Briggs or obtained an opinion from a financial expert about them or advised Briggs to do so. Instead, Wilcox admits she told Briggs that the stock options had no value. Although the stock options had no monetary value on the date of divorce, they had some intangible or potential value. In hindsight, we know the stock options had a significant value, which Moelich obtained by receiving a post-decree payment for them.

{¶26} We will not decide whether Briggs has established a genuine issue of material fact on her claim for legal malpractice, however, because we find that her claim was time barred.

2.      Statute of Limitations and Civ.R. 56(F) Motion

{¶27} R.C. 2305.11(A) establishes a one-year statute of limitations period for a legal malpractice claim.

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus, citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988).

> For the purposes of determining the accrual date of R.C. 2305.11(A) in a legal malpractice action, the trial court must explore the particular facts of the action and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a

specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury.

*Omni*, 38 Ohio St.3d at paragraph two of the syllabus.

{¶28} The attorney-client relationship between Briggs and Wilcox terminated on January 18, 2010. The complaint was filed on January 19, 2011, a year and a day after the relationship terminated. Briggs contends that the "cognizable event" occurred after January 18, 2011, and the statute of limitations was tolled during any time periods Wilcox was out of Ohio.

{¶29} A breakdown in the attorney-client relationship between Briggs and Wilcox was evident in November 2009. The correspondence between them reflects that Briggs had forbidden Wilcox from addressing personal property issues that arose post-decree and that related to the sale of the marital home.

{¶30} Briggs argues that despite the complaints she made to Wilcox and her retention of a new attorney, the cognizable event did not occur until her new attorney told her she may have a malpractice claim against Wilcox. We do not agree. Each case depends on the facts involved. *Zimmie,* 43 Ohio St.3d at 58-59. We must apply an objective, reasonable person standard of review to these facts to determine when Briggs knew or should have known about the alleged malpractice that is the basis of this case.

{¶31} Briggs relies upon *Crystal v. Wilsman*, 151 Ohio App.3d 512, 2003-Ohio-427, 784 N.E.2d 764 (8th Dist.), in support of her position that the cognizable event occurred when her new attorney allegedly substantiated allegations of malpractice

after receiving her file. The relevant inquiry is when Briggs knew or should have known about the alleged malpractice, which is not necessarily when another attorney specifically advises the client of it. *See Taylor v. Lloyd*, 7th Dist. No. 06 BE 46, 2007-Ohio-1565, ¶ 38, citing *Zimmie*, 43 Ohio St.3d at 58 (holding "the cognizable event does not require actual discovery of the existence of a legal malpractice claim").

{¶32} In *Crystal*, the attorney had represented a wife in divorce proceedings and allegedly failed to pursue the existence of the husband's pension plan as well as the husband's interest in a law firm. The wife was not aware of this fact until her cousin inquired about her husband's interest in the law firm years after the divorce was finalized. Unlike the facts in *Crystal*, in this case Briggs knew about her husband's stock options and other various assets. In fact, in this case Briggs herself proposed specific terms of settlement in hopes of "head[ing] off a trial." Briggs had actual knowledge of her husband's assets and felt there was not an equal distribution of property or income. Briggs chose to settle the divorce nonetheless. Briggs failed to exercise reasonable care in discovering the alleged malpractice, which she was aware of prior to retaining new counsel. Briggs documented her belief that she had not received income equalization or a fair distribution of her property well before January 2011.

{¶33} This case is factually analogous to *Ott v. Bradley*, 9th Dist. No. 06CA008956, 2007-Ohio-3124. Like this case, *Ott* involved allegations of legal malpractice against the plaintiff's former attorney who had represented her in negotiating a divorce settlement. In *Ott,* one of the plaintiff's complaints against her former attorney

was that he failed to locate and accurately ascertain the value of various marital assets prior to negotiating the divorce settlement. *Id.* at ¶ 16. Specifically, the wife complained that her attorney did not assess the value of her ex-husband's show-horse collection or his boat equipment. In defense, the defendant-attorney noted that the wife was aware of the existence of her husband's show horses before she had even filed for divorce. The wife "knew on the day she reviewed and signed the divorce settlement that the value of the horses had not been obtained and was not included in the settlement." *Id.* Similarly, the wife knew that her husband's boating equipment had not been appraised, nor was its value accounted for in the divorce settlement. *Id.* at ¶ 17.

{¶34} The court in *Ott* determined that the cognizable event occurred when the wife executed the settlement agreement because she knew that the assets were not included in the settlement agreement. *Id.* at ¶ 19. The court reasoned as follows:

> [A]lthough appellant was not completely aware of the extent of her alleged injuries resulting from appellee's alleged malpractice on the date the parties entered into a settlement, her knowledge of the existence of the show horses, boats, and boating equipment during the parties' marriage and her knowledge that the divorce settlement did not include these assets should have moved appellant to investigate appellee's legal representation and pursue potential remedies within a year after the finalization of the parties' divorce in 1996.

*Id.*, citing *Allenius v. Thomas*, 42 Ohio St.3d 131, 134, 538 N.E.2d 93 (1989), and *Zimmie*, *supra* at 57-58.

{¶35} In this case, Briggs not only knew about the marital assets at issue but they were initially included and addressed in a prior judgment entry, whereby she was allocated a portion of them. At the time of settlement, the clause entitling her to receive

a share of Moelich's ESOPs was explicitly removed.   Briggs was aware of what she was receiving in the settlement agreement and signed it nonetheless.   While Briggs may not have known the exact value of the marital assets at the time she executed the settlement agreement, she told Wilcox she felt that she had not received income equalization or a fair distribution of property.   Still, Briggs did not file her malpractice claim within a year of the cognizable event.

{¶36} Alternatively, Briggs maintains that the statute of limitations was tolled during any time that Wilcox spent outside of Ohio after the cause of action accrued.   *See* R.C. 2305.15; *Johnson v. Rhodes*, 89 Ohio St.3d 540, 733 N.E.2d 1132 (2000); *Wetzel v. Weyant*, 41 Ohio St.2d 135, 323 N.E.2d 711 (1975).

{¶37} Wilcox argues that this precedent does not apply because Briggs did not sue her in her individual capacity.   Instead, Wilcox argues that Briggs sued her limited liability company, which being an Ohio entity never left the state.   A fair reading of the complaint reflects that Briggs sued Wilcox individually.   The caption does identify the defendant as "Darlene A. Wilcox DBA Darlene A. Wilcox LLC"; however, the entire body of the complaint refers to defendant individually.   *Gibbs v. Lemley*, 33 Ohio App.2d 220, 221-222, 293 N.E.2d 324 (4th Dist.1972), quoting *Hoffman v. Halden*, 268 F.2d 280, 303 (9th   Cir.1959)[7] ("'* * * the determination of whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint and not

---

[7]   *Overruled in part on other grounds, Cohen v. Norris*, 300 F.2d 24, 29-30 (9th Cir.1962).

upon his inclusion in the caption.'").   Alternatively, this argument was not advanced in the trial court.

**{¶38}** Wilcox did assert the statute of limitations defense as an affirmative defense in her answer to the complaint.   In her merit brief, Briggs acknowledges that "the issue of whether appellee traveled out of the state for at least one day * * * was not addressed during the discovery phase of this case.   Therefore, appellant cannot present, by affidavit or otherwise, facts regarding appellee's travels outside Ohio."[8]

**{¶39}** Briggs did not seek any discovery on this issue until after the parties engaged in protracted discovery litigation and Wilcox had already moved for summary judgment.   Briggs sought to conduct limited additional discovery directed to this particular issue pursuant to Civ.R. 56(F), which the trial court denied.

**{¶40}** The trial court's denial of a motion made pursuant to Civ.R. 56(F) will not be disturbed on appeal unless the court abused its discretion.   *Ngaoka v. Soc. Natl. Bank,* 8th Dist. No. 57288, 1990 Ohio App. LEXIS 2986 (July 19, 1990), citing *Wallace v. Johnson*, 8th Dist. No. 54814, 1989 Ohio App. LEXIS 155 (Jan. 19, 1989).   An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude of the trial court. *Ruwe v. Bd. of Springfield Twp. Trustees*, 29 Ohio St.3d 59, 61, 505 N.E.2d 957 (1987);

---

[8]   We note that Briggs submitted some court records that suggest Wilcox was planning to travel out of town at some point during the relevant time period.   However, there is no direct evidence confirming that Briggs actually did travel out of state as was contemplated in the court records.

*see Sgro v. McDonald's Restaurant*, 21 Ohio App.3d 41, 42, 486 N.E.2d 157 (8th Dist.1984).

{¶41} Briggs relies on *Hall v. Scarbro*, 8th Dist. No. 77766, 2000 Ohio App. LEXIS 5891 (Dec. 14, 2000). In *Hall*, the defendant filed a motion to dismiss, alleging the complaint was untimely only three weeks after filing its answer in the case. The parties entered two agreed stipulations extending the plaintiff's time to respond to the motion, which were both granted by the court. Then, the trial court "inexplicably granted Scarbro's motion to dismiss before the second extension expired." *Id.* The court granted a Civ.R. 60(B)(5) motion, reinstated the case, and established a discovery deadline. But four months before the expiration of the discovery deadline, the trial court granted the motion to dismiss. On appeal, Hall argued that the trial court abused its discretion by dismissing the case before the court-ordered deadline for discovery had expired. This court found that the trial court erred by dismissing the case under those factual circumstances.

{¶42} Briggs also references *Laidley v. St. Luke's Med. Ctr.*, 8th Dist. No. 73553, 1999 Ohio App. LEXIS 2567 (June 3, 1999). In *Laidley*, the hospital moved for summary judgment, asserting that the complaint was untimely. While Laidley's motion to compel discovery was pending as to documents relevant to the tolling of the limitations period, i.e., the physician's vacation records, the trial court dismissed the case. In *Laidley,* the appellant contended "that where discovery matters are outstanding which

bear upon the statute of limitations issue, then, the trial court erred in granting summary judgment." This court agreed.

**{¶43}** This case is factually distinguishable from both *Hall* and *Laidley*. There was no outstanding discovery in this case. The statute of limitations issue was raised as an affirmative defense at the pleading stage. The court granted some extensions of time in which to conduct and complete discovery. The matter had been pending in the trial court for over a year, and discovery had been extended and closed before the summary judgment order was rendered. Briggs had moved for additional time to respond to the summary judgment motion pursuant to Civ.R. 56(F), which the trial court denied within its discretion. While we might have reached a contrary result, "[w]hen applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court*." State ex rel. Duncan v. Chippewa Twp. Trustees,* 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995). The trial court did not commit an abuse of discretion by denying Briggs's Civ.R. 56(F) motion on these facts.

**{¶44}** Accordingly, the statute of limitations provided a basis for awarding Wilcox summary judgment in this case.

**{¶45}** Wilcox's remaining ground for summary judgment, judicial estoppel, is rendered moot by the resolution of the statute of limitations issue, and we decline to address it.

**{¶46}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, P.J., DISSENTS (WITH SEPARATE DISSENTING OPINION)


MARY J. BOYLE, P.J., DISSENTING:

**{¶47}** I respectfully dissent. After reviewing the evidence in this case, it is my view that Briggs has established that genuine issues of material fact remain on her legal malpractice claim. It is also my view that as a matter of law, her claim is not barred by the statute of limitations or judicial estoppel.

**{¶48}** The majority points out that it is undisputed that before Briggs entered into the divorce settlement agreement, Wilcox told Briggs that her ex-husband's stock options and assets in an employee stock ownership plan ("ESOP") were worth zero — when in fact, according to Briggs's experts in this case, the stock options had a value of over $130,000 on the date of divorce and an ESOP with a value of over $540,000, all of which Briggs's expert states that she would have been entitled to half. As also highlighted by the majority, Wilcox does not offer any expert to counter the opinion of Briggs's expert

that there was "blatant economic unfairness to the wife" in the disposition of the divorce case, or to counter the monetary value that Briggs's expert calculated for the stock options and ESOP.

{¶49} Indeed, again as the majority states, the evidence establishes that during the divorce proceedings, Wilcox simply relied on financial statements for her husband's stock option plan, the opinion of husband's and wife's financial advisor, and husband's counsel, all stating that the stock options and ESOP were worth nothing (or even had a negative value). This writer finds that this fact — that Wilcox never obtained a financial expert's opinion as to the value of these assets — to be significant.

{¶50} As one court explained:

[T]he valuation of stock options does not lend itself to one universal approach. Determining the value of stock options is a complicated endeavor. *See*, *e.g*., *Everett v. Everett*, 195 Mich. App. 50, 53, 489 N.W.2d 111 (1992) ("Other jurisdictions have examined the issue regarding how to calculate the value of stock options, a formidable task given the numerous possible contingencies and restrictions involving stock options."). As a result, methods for valuing stock options and assets of fluctuating value vary widely, both in the context of dissolution actions and the context of tort actions.

*In re Marriage of Farmer*, 172 Wash.2d 616, 259 P.3d 256, ¶ 23 (2011).

{¶51} Rather than decide whether genuine issues of material fact remain regarding Wilcox's alleged malpractice, however, the majority does not reach the issue because it holds that Briggs's claims are time barred. I disagree.

{¶52} R.C. 2305.11(A) provides that the statute of limitations for a legal malpractice claim in Ohio is one year after the cause of action accrued. The Ohio

Supreme Court has established a two-part test to determine when the statute of limitations begins to run on a claim for legal malpractice:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus.

**{¶53}** The Ohio Supreme Court has also made it clear, that, in an assessment of the actual occurrence and date of a cognizable event, an objective reasonable person standard of review, and not a subjective standard, is to be employed. *Id.* This test provides that "it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that improper legal work has taken place." *Id.* at 58.

**{¶54}** In this case, it is undisputed that the attorney-client relationship between Briggs and Wilcox ended on January 18, 2010. Wilcox argued in her summary judgment motion that Briggs's legal malpractice complaint against her, filed January 19, 2011, was barred by the one-year statute of limitations by one day. But Briggs argues that the statute of limitations did not begin to run until well into March 2010, i.e., she maintains that the cognizable event did not occur until her new attorney told her in March 2010 that she may have a malpractice claim against Wilcox.

**{¶55}** The majority disagrees with Briggs, concluding that because Briggs "knew about her husband's stock options and various assets," and "felt there was not an equal distribution of property or income," but "chose to settle the divorce nonetheless," that she failed to exercise reasonable care in discovering the alleged malpractice.

**{¶56}** The majority analogizes this case to *Ott v. Bradley*, 9th Dist. No. 06CA008956, 2007-Ohio-3124, where the assets at issue were the husband's show horses, his boats, and boat-racing equipment. The wife entered into a divorce settlement agreement that did not include these assets. Subsequently, the wife complained that her divorce attorney did not assess the value of these assets. The court found, however, that the cognizable event occurred when the wife executed a settlement agreement because she knew that the assets at issue were not included in the agreement. *Id.* at ¶ 19. There was evidence in the record that during the marriage the wife knew that her husband had borrowed "huge sums of money" to purchase show horses, knew that her husband owned "at least a dozen horses," and kept "eight or nine" of them at the marital residence, and knew that one of the horses was worth $40,000. The court explained:

> [A]lthough [the wife] was not completely aware of the extent of her alleged injuries resulting from [her divorce attorney's] alleged malpractice on the date the [husband and wife] entered into a settlement, her knowledge of the existence of the show horses, boats, and boating equipment during the parties' marriage and her knowledge that the divorce settlement did not include these assets should have moved appellant to investigate appellee's legal representation and pursue potential remedies within a year after the finalization of the parties' divorce in 1996.

*Id.*

{¶57} I find *Ott*, however, to be distinguishable for multiple reasons. The assets involved in the present case are much more complex, not tangible property items such as horses and boats. The wife in *Ott* claimed that her attorney failed to discover these assets. But during discovery, the wife testified in her deposition that she had known of the assets about a year before her divorce. Not only did she know of them, she knew that they were likely worth a lot of money. Under a reasonable, objective person standard of review, she should have known to pursue her claims against her attorney for not including them in the settlement agreement.

{¶58} In the present case, while it is true that Briggs knew of her husband's stock options, she had been advised by Wilcox, her divorce attorney, that they were not worth anything. When Briggs entered into the settlement agreement, it was reasonable that she relied on her attorney's expertise.

{¶59} I would find this case to be exactly on point with *Crystal v. Wilsman*, 151 Ohio App.3d 512, 2003-Ohio-427, 784 N.E.2d 764 (8th Dist.). As the majority explains, the divorce attorney in *Crystal* allegedly failed to pursue the existence of the husband's pension plan, as well as the husband's interest in a law firm. The wife was not aware of this fact until her cousin, an attorney, inquired about her husband's interest in the law firm years after the divorce was finalized. This court held that the cognizable event did not occur until the wife's cousin discussed the matter with her. We explained:

> At the time the court journalized the divorce decree, [the wife] only knew that she was displeased with her lawyer, and that she felt her husband deceived her. No evidence exists from which we may conclude [the wife], at the time of settlement, was aware, or should have been aware, that her

supposed injury was related to any act, or failure to act, attributable to her attorney. As this is the crucial issue when applying the statute of limitations for a legal malpractice claim, a cognizable event did not occur in 1991.

The cognizable event occurred on or after November 26, 1998 when [the wife] and [her cousin] discussed her divorce proceedings. It was only during this time frame when [the wife] connected her injury with her attorney's failure to pursue her husband's interest in his law firm.

*Id.* at ¶ 19-20.

{¶60} The majority finds the facts herein to be distinguishable from *Crystal* because Briggs knew about her husband's stock options and other various assets. Because of this, the majority concludes that Briggs "failed to exercise reasonable care in discovering the alleged malpractice, which she was aware of prior to retaining new counsel." I disagree. Even in *Crystal*, the wife was aware that her husband was a partner in a law firm. *Id.* at ¶ 21 (Cooney, J., dissenting). That did not mean, however, that she was expected to know the legal implications of that fact for purposes of settling her divorce. Similarly here, Briggs had no idea that her attorney may have committed malpractice — not until another attorney informed her of this possibility. I would find as a matter of law that under the objective reasonable person standard, Briggs exercised reasonable care in discovering her attorney's alleged malpractice.

{¶61} Because I would find that the cognizable event occurred when Briggs learned from her new counsel that Wilcox may have committed malpractice, I would not reach the issue as to whether the statute of limitations was tolled by Wilcox allegedly

leaving Ohio such that the statute of limitations would have been tolled by that time under R.C. 2305.15(A). On this issue, however, I disagree with the majority's analysis.

**{¶62}** "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control[.]" *Welch v. Ziccarelli*, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, ¶ 40; *see also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992) (summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party). Therefore, in interpreting Civ.R. 56(F), "a trial court should apply the rule liberally to ensure that the nonmoving party in any summary judgment exercise has sufficient time to discover any fact which is needed to properly rebut the argument of the moving party." *Marshall v. Silsby*, 11th Dist. No. 2004-L-094, 2005-Ohio-5609, ¶ 18. Thus, it is my view that due to the complexity of the present case and the fact that Briggs obtained substitute counsel in December 2011, the trial court should have granted Briggs's Civ.R. 56(F) motion for continuance of summary judgment to permit further discovery on the issue of whether Wilcox left the state of Ohio during the relevant time. As Briggs stated in her Civ.R. 56(F) motion, she only wanted to continue the matter "to serve merely 3 interrogatories on the defendant." In the interest of justice, it is my view that the trial court should have granted her request.

**{¶63}** Finally, although the majority does not reach this issue, I would find that under the facts of this case, Briggs's legal malpractice claim is not barred by judicial

estoppel as a matter of law simply because she entered into a settlement agreement with her ex-husband.

**{¶64}** "The doctrine of judicial estoppel 'forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998), quoting *Teledyne Industries, Inc. v. Natl. Labor Relations Bd.*, 911 F.2d 1214, 1217 (6th Cir.1990). "Courts apply judicial estoppel in order to 'preserve[] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.'" *Id.*, quoting *Teledyne* at 1218.

**{¶65}** It is my view that Briggs's position — that her attorney committed malpractice — is not inconsistent with her entering into a settlement agreement in her divorce case. She entered into the settlement agreement — at least in part — on the advice of Wilcox. Wilcox cannot now argue that Briggs's position at her final divorce hearing, i.e., that she understood the terms of the settlement agreement and agreed with it, is inconsistent with her position now. Indeed, Briggs was not aware of the value of her ex-husband's stock options and ESOP when she entered into her divorce settlement — due to Wilcox's alleged malpractice. And notably, according to Briggs's expert's uncontradicted opinion, the value of these assets was nearly $700,000 — of which Briggs would have been entitled to half.

**{¶66}** Thus, I find the doctrine of judicial estoppel inapplicable to Briggs's legal malpractice claim.